IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TREA SENIOR CITIZENS LEAGUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 10-1423 (BAH) |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. section 552, as amended.  Plaintiff, TREA Senior Citizens League ("TSCL"), a nonprofit, tax-exempt organization, and one of the largest nonpartisan seniors organizations in the nation, seeks injunctive and other appropriate relief against defendant, the United States Department of State (hereinafter "State Department"), for the State Department's refusal to identify and disclose certain records concerning the U.S./Mexico Totalization Agreement[1] that had been requested by TSCL under FOIA.

The State Department claims that a number of records are exempt from disclosure, and has filed a motion for summary judgment ("Def. MSJ"), accompanied by a memorandum of points and authorities and three declarations, together with a statement of material facts as to which it contends there is no genuine issue.  In response, TSCL submits:  (i) this memorandum

---

[1]      *See* footnote 2, *infra*.

2

of points and authorities; (ii) Plaintiff's Statement of Material Facts as to Which a Genuine

Issue Exists; (ii) a List of Disputed Documents (Exhibit A); and (iv) the Declaration of

William J. Olson (Exhibit B), one of TSCL's attorneys herein, in opposition to the State

Department's pending motion for summary judgment.

## PARTIES AND JURISDICTION

TSCL is a nonprofit educational organization incorporated under the laws of Colorado,

and is tax-exempt under section 501(c)(4) of the Internal Revenue Code of 1986 as a social

welfare organization.  TSCL is engaged in a variety of research and public education activities,

particularly as they relate to the rights and benefits of senior citizens in the United States.

TSCL's activities include, *inter alia*, monitoring developments in the United States with

respect to the interests of senior citizens, defending those interests, developing educational

materials designed to explain to senior citizens their various rights as U.S. citizens, raising the

level of public awareness of senior citizens' rights, conducting surveys and polls, and

publishing and distributing informational newsletters to members, supporters, and the public.

Complaint ¶ 3.

The State Department is a department in the Executive Branch of the United States

Government, and is an agency within the meaning of 5 U.S.C. § 552(f), established by statute

and charged with responsibility for, *inter alia*, assisting in the conduct of relations between the

United States and foreign governments, including negotiations, agreements, and treaties.  *See*

Complaint ¶ 4.  The State Department has possession of and control over the records,

memoranda, reports, documents, publications, and similar papers and files sought by plaintiff

in this action, and is responsible for fulfilling TSCL's FOIA request at issue herein.  *Id.*

3

This Court has both subject matter jurisdiction over this action and personal jurisdiction over defendant pursuant to 5 U.S.C. section 552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. section 1331.  *See* Complaint ¶ 2.

### STATEMENT OF FACTS

**1.  TSCL's July 7, 2008 FOIA Request and the State Department's Response.**  By letter dated July 7, 2008, TSCL submitted a FOIA request to the State Department seeking the disclosure of all records in the possession or control of the State Department and dated or created between January 1, 2001 and the present, concerning or relating to the agreement between the United States and Mexico which would provide, in some manner, for the payment of U.S. Social Security benefits to Mexican nationals, referred to as the U.S./Mexico Social Security Totalization Agreement.[2]  There is substantial evidence that putting such an agreement into effect would further jeopardize the financial ability of the Social Security Trust Funds to pay current commitments to those in the United States.  *See, e.g.,* Report No. GAO-03-1035T (Sep 11, 2003) (Government Accountability Office).  Plaintiff's FOIA request also contained a

---

[2]      A totalization agreement is an international social security agreement (between the U.S. and another country) that is supposed to coordinate the U.S. Social Security program with a comparable program of the other country, with the goals of:  (i) eliminating dual social security taxation that occurs when a worker from one country works in another country and is required to pay social security taxes to both countries on the same earnings; and (ii) helping to fill gaps in benefit protection for workers who have divided their careers between the U.S. and another country, but who have not worked long enough in one or both countries to qualify for social security benefits.  Under such agreements, workers are allowed to combine work credits from both countries to become eligible for benefits, with the benefit amount being proportional to the amount of credits earned in the paying country.  *See* Fact Sheet, www.ssa.gov/pressoffice/factsheets/USandMexico-alt.htm.  The pending totalization agreement with Mexico was signed by representatives of both countries in 2004, but has not yet been submitted to Congress.

4

request for a fee waiver and a request for expedited processing.  Although acknowledging

TSCL's FOIA request, and granting its fee waiver request, the State Department never

responded substantively to TSCL's FOIA request prior to the filing of this suit.  Indeed, the

State Department, advising TSCL that its FOIA request was not subject to an administrative

appeal because no specific material had been denied in response to plaintiff's request,

suggested that TSCL's administrative remedies should be considered exhausted in light of the

State Department's failure to respond to the FOIA request.  *See* Complaint ¶¶ 9-14 and

Exhibits B-D.

      **2.  Suit Filed Because of the State Department's Failure to Respond.**  Because the

State Department never responded substantively to TSCL's FOIA request, TSCL was forced to

file this lawsuit to obtain the requested records.  TSCL's Complaint herein was filed in August

2010, more than two years after the submission of its FOIA records request to the State

Department.  The Complaint requested that the State Department be required to provide a

substantive response to the FOIA request, including any responsive documents required to be

produced under FOIA.  The State Department admitted that it had not yet begun to produce

any records in response to TSCL's FOIA request.  Answer ¶13.  This was not the first time

TSCL was forced to sue the State Department regarding documents related to the Totalization

Agreement.  In 2006, it filed suit against the State Department and the Social Security

Administration because of those agencies' failure to disclose documents responsive to TSCL's

FOIA requests.  Ultimately, the agencies disclosed the Totalization Agreement itself — which

it had withheld from the Congress and the public until that time —  along with certain related

documents, and the FOIA suits were dismissed.  *See* Olson Decl. (Exh B) ¶8.  TSCL has

5

testified before Congress about such efforts, as well as its concerns about the potential effects

of the U.S./Mexico Totalization Agreement — if it ultimately goes into effect — on the U.S.

Social Security system.  *See* 2007 Testimony of TSCL Executive Director Shannon L. Benton

before House Subcommittee on Immigration, Citizenship, etc. (Judiciary Committee) (p. 35, *et*

*seq.*), http://www.gpo.gov/fdsys/pkg/CHRG-110hhrg36174/html/CHRG-110hhrg36174.htm.

The Totalization Agreement could be submitted to Congress at any time and would go into

effect unless disapproved by one House of Congress.  *See* 42 U.S.C. §433(e)(2).  Assuming

that should occur — and the withheld documents could bear on that question — there would be

insufficient time to submit a new FOIA request or file suit asking a court to order the State

Department and/or the Social Security Administration to comply with a pending FOIA request.

    **3.  The State Department's Litigation-Related Release of Documents**.  Ultimately,

between December 2010 and July 2012 — pursuant to the commitments it made to this Court

during the pendency of this action[3] — defendant responded substantively to TSCL's FOIA

request, producing certain documents and refusing to produce others that it claims are

protected by one or more FOIA exemptions.  The parties' settlement efforts to resolve their

---

      [3]      Defendant produced certain documents on the following dates: December 15,
2010, February 4, 2011, April 11, 2011, July 11, 2011, July 17, 2011, August 26, 2011,
September 28, 2011, March 15, 2012, and June 29, 2012.

6

dispute over defendant's exemption claims having failed,[4] it was determined that the issues

between the parties would need to be resolved by the Court.

    **4. The Disputed Documents**.  Although approximately 80 documents were withheld

from TSCL in whole or in part (*see* Def. MSJ, Exh. A (Walter Decl. #1 at ¶ 181)), TSCL

contests herein defendant's FOIA exemption claims to only 19 of these disputed documents

("the disputed documents").  *See* footnote 4, *supra*.  The 19 disputed documents are listed —

together with the relevant references to defendants' declarations describing them — on Exhibit

A hereto.  All of the disputed documents related to the status of the June 29, 2004

U.S./Mexico Totalization Agreement that is the subject of TSCL's FOIA request and/or the

Diplomatic Note interpreting that agreement.  Both the signed U.S./Mexico Totalization

Agreement and the Diplomatic Note — together with a companion agreement known as the

Administrative Arrangement for implementation of the Totalization Agreement, and a

confirmatory telegram regarding the signing of the agreements and transmission of the

Diplomatic Note to Mexico — were released to TSCL in 2006 as a result of prior FOIA

litigation, and those documents have been public documents since that time.  The disputed

---

    [4]    After reviewing a description of the documents withheld in full or in part by the State Department — in a draft <u>Vaughn</u> Index furnished by defendant in the fall of 2011 — counsel for TSCL identified and presented counsel for defendant with a list of 16 documents that TSCL believed warranted further disclosure.  Thirteen of those 16 documents, together with six additional documents selected after seeing defendant's summary judgment filing, constitute the documents that are the subject of this litigation — *i.e.*, the "disputed documents."  *See* Exhibit A hereto.

7

documents in this case have to do with those documents or commentary about them that has occurred since 2004.[5]

   **5. Defendant's Motion for Summary Judgment**.  The State Department submitted an initial summary judgment motion, which was withdrawn.[6]  Thereafter, it filed a Renewed Motion for Summary Judgment and accompanying memorandum ("Def. Mem. S.J.") on July 13, 2012, together with the Declarations of Sheryl L. Walter[7] (from the State Department) and Mary Ann Zimmerman (from the Social Security Administration), which describe the withheld documents and the bases for the exemption claims, and a statement of material facts as to which there is no genuine issue ("Def. SMF").  Some of the documents were redacted, and others were withheld in their entirety, defendant claiming they are exempt from disclosure under 5 U.S.C. sections 552(b)(1) and (b)(5) ("FOIA Exemptions 1 and 5").  *See* Walter Decl. #1, ¶¶ 53-180; Walter Decl. #2, ¶¶ 5-8; Zimmerman Decl., ¶¶ 5-9.  Of the 19 disputed

---

[5]       *See* Olson Declaration, Exhibit B hereto, ¶8 and Exhibits 1-4.

[6]       Subsequent to filing its original motion for summary judgment, the State Department filed a "Notice Concerning Referred Documents" on May 7, 2012, which included, *inter alia*, several letters from the Social Security Administration ("SSA") related to documents that the State Department belatedly had located in response to TSCL's FOIA request of July 7, 2008 that is the subject of this litigation.  Ultimately, the State Department added the SSA-related documents to its list of records claimed to be exempt from disclosure under FOIA, withdrew its motion for summary judgment, and filed its "renewed" motion for summary judgment which addresses all of the subject documents defendant claims are exempt from disclosure under FOIA, including the late-discovered documents.

[7]       There are two declarations by Sheryl Walter, one dated April 5, 2012 (Walter Decl. #1) and the other dated June 28, 2012 (Walter Decl. #2).

documents, 14 were withheld in full, and five in part.  *See* Walter Decl. #1, ¶¶ 59, 71, 87, 89,

91, 93, 95, 97, 99, 139, 141, 143, 153 ; Walter Decl. #2, ¶¶ 5-8; Zimmerman Decl. ¶9.[8]

**6.  TSCL's Motion for *In Camera* Review**.  As is evident from the parties' filings,

there are factual issues in this case concerning the substance of the disputed documents

withheld by defendant.  The State Department has characterized the withheld documents, as so

often occurs in FOIA cases, in conclusory language that by its very nature tends to support the

claimed FOIA exemptions without shedding light on whether the claimed exemption is

supported in fact.  TSCL submits that the State Department has not adequately described some

of the documents and their contents, so that TSCL cannot know whether the State

Department's ground for refusing to disclose such documents is sufficient or should be

rejected.  This is particularly so where the State Department contends that no reasonably

segregable portion of a document can be disclosed — a position the State Department has taken

with respect to the great majority of the disputed documents withheld in full.  Accordingly,

contemporaneously with the filing of this Memorandum, TSCL has filed a Motion for *In*

*Camera* Review,  seeking an *in camera* review of those documents by this Court, which would

provide a more complete record with which the Court can better evaluate the parties'

respective arguments about whether the disputed documents are entitled to exemption under

FOIA.  *See also* attached Declaration of William J. Olson, Exhibit B hereto.

**7.  TSCL's Statement of Disputed Material Facts**.  For the reasons set forth in this

memorandum, TSCL believes that the FOIA exemptions claimed by defendant do not apply,

---

[8]      One of the disputed documents also involves, in part, a claim for exemption
from disclosure under FOIA exemption (b)(6), but TSCL is not contesting the (b)(6) claim.

9

and that the disputed documents should be disclosed.  Certainly, moreover, TSCL cannot agree

with the purported statement of undisputed material facts ("Def. SMF") filed by the State

Department.  The State Department's so-called statements of undisputed facts are more akin to

proposed conclusions of law.  *See, e.g.,* Def. SMF, ¶2 ("The documents … that were withheld

in whole or in part … under FOIA Exemption (b)(1) … were properly withheld."); DSMF ¶3

("The documents … that were withheld in whole or in part … under FOIA Exemption (b)(5)

… were properly withheld.").  Except with respect to the search conducted by the State

Department (*see* Def. SMF ¶3), which TSCL is not contesting in this lawsuit, all of the

purported undisputed facts recited by defendant involve questions of law.  TSCL has filed its

own Statement of Material Facts as to Which a Genuine Issue Exists ("TSCL SOMF"), taking

issue with most of the "material facts" recited in defendant's statement of material facts as to

which no genuine issue exists.

As indicated in its Statement of Material Facts as to Which a Genuine Issue Exists,

TSCL believes that there are certain material facts concerning the State Department's

objections to disclosure, and that summary judgment in favor of defendant should not be

granted.[9]

## SUMMARY OF ARGUMENT

The State Department has not demonstrated that the 19 disputed records are exempt

from disclosure.  With respect to the documents withheld under **FOIA Exemption 1**, they all

have to do with the U.S./Mexico Totalization Agreement that is the subject of TSCL's FOIA

---

[9]      *See also* Olson Decl, Exh. B, ¶¶6-7.

request and/or the Diplomatic Note interpreting that agreement — both of which are now

public documents.  The signed U.S./Mexico Totalization Agreement has been disclosed in full

to the public.  The Diplomatic Note from the U.S. State Department to the Government of

Mexico interpreting that agreement has also been disclosed in full to the public.  After

disclosing the central documents, the defendant should not be heard to complain about the

disclosure of ancillary documents dealing with the meaning of those publicly-disclosed items.

All of the documents withheld under **FOIA exemption 5** should be disclosed because

defendant has failed to advance any convincing, non-conclusory reason to withhold them.

Although certain of the documents may appear as possible candidates for exemption as pre-

decisional or deliberative, defendant has not made an adequate showing of their claimed pre-

decisional or deliberative nature to qualify for exemption.  In the case of all of the documents

withheld in full, TSCL takes issue with defendant's conclusory assertion that no reasonably

segregable portions of the documents can be disclosed, particularly as they contain purely

factual matters.

## ARGUMENT

**I.     NATURE AND STANDARD OF THIS COURT'S REVIEW**

Summary judgment is appropriate in a contested FOIA case such as this, as in other

litigation, only when "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  *See, e.g.*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C.

Cir. 1995).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

Summary judgment on the basis of agency affidavits in a FOIA case is appropriate only if the affidavits are specific, reasonably detailed, and descriptive of the withheld information in a factual and non-conclusory manner, and if there is no contradictory evidence on the record or evidence of agency bad faith.  *See, e.g.*, Hayden v. National Security Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979); Western Ctr. for Journalism v. Internal Revenue Service, 116 F. Supp. 2d 1, 7 (D.D.C. 2000).

When deciding a motion for summary judgment in a FOIA matter, the court reviews the agency's decision *de novo*.  Summers v. U.S. Department of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 19989).  *See also* 5 U.S.C. § 552(a)(4)(B).  Where there is significant doubt that the Vaughn Index is adequate, summary judgment for the agency is not proper.  Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990); King v. U.S. Department of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987).

## II.    THE STATE DEPARTMENT HAS IGNORED THE PRESUMPTION IN FAVOR OF DISCLOSURE IN RESPONDING TO TSCL'S FOIA REQUEST

**A.  General FOIA Principles Favoring Disclosure**.  Under FOIA, every "agency" shall make "available to any person" for "public inspection and copying" all requested records that are not privileged from disclosure under one of FOIA's nine statutory exemptions.  *See* 5 U.S.C. § 552(a)(3), (a)(4).  FOIA was enacted "to establish a general philosophy of full

12

agency disclosure." <u>Environmental Protection Agency</u> v. <u>Mink</u>, 410 U.S. 73, 80 n.6 (1973);

<u>Dep't of the Air Force</u> v. <u>Rose</u>, 425 U.S. 352, 361-62 (1976).  Full disclosure is the official

policy of the Executive Branch, as confirmed by President Obama's January 21, 2009

Memorandum for the Heads of Executive Departments and Agencies.[10]  Although FOIA

exemptions exist, they are narrowly construed, *see* <u>Vaughn</u> v. <u>Rosen</u>, 484 F.2d 820, 823

(D.C. Cir. 1973), and the agency has the burden of proving that its decision to withhold a

record responsive to a FOIA request is justified.  *See* 5 U.S.C. § 552(a)(4)(B).  Even if a

requested record contains exempt information, it must still release "any reasonably segregable

portion" of that record.  *See* 5 U.S.C. § 552(b).  *See also* <u>Oglesby</u> v. <u>U.S. Dept. of Army</u>, 79

F.3d 1172, 1176 (D.C. Cir. 1996).[11]

   **B.  Documents Requested by TSCL Involve Important Public Issues.**  The records

requested by TSCL concern matters of great significance:  the U.S./Mexico Totalization

---

[10]      "The Freedom of Information Act should be administered with a clear
**presumption**:  In the face of doubt, **openness** prevails … [i]n responding to requests under the
FOIA, executive branch agencies … should act **promptly** and in a spirit of cooperation,
recognizing that such agencies are servants of the public.
      All agencies should adopt a **presumption in favor of disclosure**, in order to renew
their commitment to the principles embodied in FOIA, and to usher in a new era of open
Government.  The presumption of disclosure should be applied to all decisions involving
FOIA.  74 *Fed*. *Reg*., No. 15, pp. 4683-84, (Jan. 26, 2009) (emphasis added);
http://www.whitehouse.gov/the_press_office/FreedomofInformationAct/.

[11]      A federal agency such as the State Department  has the authority to construe the
exemptions as discretionary rather than mandatory when no harm would result from disclosure
of the requested information.  <u>Chrysler Corp</u>. v. <u>Brown</u>, 441 U.S. 281, 293 (1979).
Consequently, even if a requested document falls within one of the stated exemptions, the State
Department normally can release it anyway as an exercise of its discretionary powers.
Moreover, "[t]hese exemptions are specifically made exclusive … and must be narrowly
construed."  <u>Dept. of the Air Force</u> v. <u>Rose</u>, 425 U.S. 352, 361 (1976).

13

Agreement signed by the United States and Mexico on June 29, 2004, and how such an

agreement would affect the citizens of the United States.  The publicized negotiations regarding

the agreement, during the period 2002-2004 when the Bush Administration was negotiating the

agreement with the government of Mexico, raised significant controversy.  One of the

continuing issues regarding such an agreement is the impact such an agreement would have on

the United States' Social Security Trust Funds.  For example, the United States Government

Accountability Office (formerly the General Accounting Office), which examines matters

relating to the receipt and payment of public funds, published a report in September 2003

severely criticizing the Social Security Administration' s estimates of that projected impact.

*See* GAO Report No. GAO-03-1035T (Sep 11, 2003).[12]  Although the government actually

---

[12]      The published highlights of the GAO report indicated that "[b]ecause Mexicans
are believed to represent a large share of the millions of unauthorized workers present in the
United States, a totalization agreement with Mexico has raised concerns that they would
become newly eligible for social security benefits ....  SSA has no written policies or
procedures it follows when entering into totalization agreements, and the actions it took to
assess the integrity and compatibility of Mexico's social security system were limited and
neither transparent nor well-documented. .... The proposed agreement will likely increase the
number of unauthorized Mexican workers and family members eligible for social security
benefits.... The cost of such an agreement is highly uncertain. In March 2003, the Office of
the Chief Actuary estimated that the cost of the Mexican agreement would be $78 million in
the first year and would grow to $650 million (in constant 2002 dollars) by 2050. The actuarial
cost estimate assumes the initial number of newly eligible Mexican beneficiaries is equivalent
to the 50,000 beneficiaries living in Mexico today and would grow sixfold over time.
However, this proxy figure does not directly consider the estimated millions of current and
former unauthorized workers and family members from Mexico and appears small in
comparison with those estimates. The estimate also inherently assumes that the behavior of
Mexican citizens would not change and does not recognize that an agreement could create an
additional incentive for unauthorized workers to enter the United States to work and maintain
documentation to claim their earnings under a false identity. Although the actuarial estimate
indicates that the agreement would not generate a measurable long-term impact on the actuarial
balance of the trust funds, a subsequent sensitivity analysis performed at GAO's request shows
that a measurable impact would occur with an increase of more than 25 percent in the estimate

signed the agreement, it has not yet been sent to Congress for review, but it could be submitted at any time.  For the past eight years, the government has put out relatively little information about the U.S./Mexico Totalization Agreement, which could have a significant effect on the United States Social Security programs and the solvency of their trust funds. *See* www.seniorsleague.org/issues/totalization-agreement/.  The public does not know why that situation prevails. These are matters of great concern to senior citizens, being subjects on which the public deserves to be informed.  *See* www.seniorsleague.org/2012/ask-the-advisor-July-2012/.  Indeed, Congress recently expressed its concern for the effect of the Totalization Agreement by prohibiting implementation of it during fiscal year 2012, expiring September 30, 2012. *See* Consolidated Appropriations Act, 2012, Pub. L. 112-74, sec. 521 (Dec. 23, 2011).

**C.  The State Department's Response to TSCL's FOIA Requests Was Inadequate**.

The State Department has failed to act in accordance with the spirit of disclosure that is the foundation of the FOIA (EPA v. Mink, 410 U.S. at 80), and with the presumption of disclosure that was at the heart of President Obama's 2009 call to the heads of his executive agencies.  *See* fn 10, *supra*.  Examples of this lack of disclosure spirit are:  (i) the State Department's consistent refusal to provide TSCL with any information concerning the withheld documents — a Vaughn-type Index would have been ideal, but any document descriptions would have helped — during the administrative consideration of TSCL's 2008 FOIA request and until well into this litigation; (ii) the State Department's apparent refusal to consider

---

of initial, new beneficiaries…. Because of the significant number of unauthorized Mexican workers in the United States, the estimated cost of the proposed totalization agreement is even more uncertain than in prior agreements." *See* http://www.gao.gov/products/GAO-03-1035T.

seriously, prior to litigation, the discretionary release of many of the documents that the State

Department refused to disclose; and (iii) the State Department's refusal to disclose a number of

documents that pre-date the signing of the Totalization Agreement in 2004.[13]

III.    **THE NATIONAL DEFENSE/FOREIGN POLICY EXEMPTION — FOIA EXEMPTION 1 — DOES NOT APPLY TO DOCUMENTS REGARDING THE U.S./MEXICO TOTALIZATION AGREEMENT, WHICH HAS ALREADY BEEN DISCLOSED**

The State Department claims that several of the disputed documents are exempt under

FOIA Exemption 1, which provides as follows:

> (b)(1) Information specifically authorized by an executive order to
> be kept secret in the interest of national defense or foreign policy.
> Executive Order 13526 includes the following classification
> categories:
> *******
> 1.4(d) foreign relations or foreign activities of the US, including
> confidential sources;

To withhold information under Exemption 1, the State Department must show that it

"complies with classification procedures established by the relevant executive order and

withholds only such material as conforms to the order's substantive criteria for classification."

King v Dep't of Justice, 830 F.2d 210, 214 (D.C. Cir. 1987); Salisbury v. United States, 690

---

[13]    Indeed, both the State Department and the Social Security Administration withheld disclosure of the U.S./Mexico Totalization Agreement itself long after it was signed, despite TSCL's FOIA request asking for it, forcing TSCL to sue those agencies in 2006. The lawsuits were entitled TREA Senior Citizens League v. U.S. Department of State, Civil Action No. 06-1201 (CKK) (D.D.C. 2006), and TREA Senior Citizens League v. Social Security Administration, Civil Action No. 06-1202 (JDB) (D.D.C. 2006). The suits were dismissed upon the government's agreement to disclose the Totalization Agreement, along with the Diplomatic Note regarding the government's interpretation of that Agreement. See Exh. B, Olson Decl.¶8.

F.2d 966, 970-73 (D.C. Cir. 1982).  *See also* <u>Lesar</u> v. <u>Dep't of Justice</u>, 636 F.2d 472, 483 (D.C. Cir. 1980) ("To be classified properly, a document must be classified in accordance with the procedural criteria of the governing Executive Order as well as its substantive terms.").

Thus, FOIA Exemption 1 allows the withholding of properly classified documents which protect an interest of national defense or foreign policy.  The primary difficulty with the defendant's position in this case regarding Exemption 1 has to do with the merits of the defendant's classification of the documents it has withheld, in light of the information already provided to the public regarding the same subject matter.  There are also issues as to whether all reasonably segregable portions of withheld documents have been disclosed.

Executive Order 13526, upon which the State Department relies to support its (b)(1) exemption claim, sets forth four requirements for the classification of national security information:  (1) an original classification authority must classify the information; (2) the U.S. Government must own, produce, or control the information; (3) the information must be within at least one of eight protected categories enumerated in section 1.4 of the Executive Order; and (4) the original classification authority must determine that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the classification authority is able to identify or describe the damage.  *See* E.O. 13526 § 1.1(a).

Even if the steps for classification under Executive Order 13526 have been followed — it is unclear, for example, who actually classified many of the disputed documents, and when — there is an issue in this case about whether information in the documents being withheld is

already in the public domain.  If so, an important legal issue regarding the application of FOIA

Exemption 1 in this matter — even assuming that the State Department's classification claim

might otherwise be sustainable — is whether the exemption has been waived.  *See* <u>Lawyers

Comm. for Human Rights</u> v. <u>INS</u>, 721 F. Supp. 552, 569 (S.D.N.Y. 1989) (Exemption 1

protection not available when same documents were disclosed by foreign government or when

same information was disclosed to media in "off-the-record exchanges").

    The documents which the State Department seeks to withhold under FOIA Exemption 1

have to do with the status of the U.S./Mexico Totalization Agreement that was signed by the

United States and Mexico on June 29, 2004.  At that time, the United States transmitted to the

Government of Mexico a document known as the "Diplomatic Note," which set forth the

United States' interpretation of the Totalization Agreement with respect to the fact that illegal

aliens would not benefit under the Agreement.  *See* Exh. B (Olson Decl.) ¶8 and Exhibits 1

and 3.  However, since that time, the American public has been kept in the dark about any

further developments, including whether the Government of Mexico agreed with, or disputed,

the United States' interpretation of the Totalization Agreement as set forth in the Diplomatic

Note.  It would appear that a number of the disputed documents contain information about such

developments, but that they are being withheld on the theory that, if they were disclosed, it

would interfere with continuing negotiations between the United States and Mexico.  TSCL

believes that, having publicized the Totalization Agreement and the Diplomatic Note, the

government has put the information and the issue in the public domain, and that the

government should keep the American people informed about the matter.

18

With the foregoing in mind, TSCL submits the following with respect to the disputed

documents withheld by the State Department under FOIA Exemption 1:

**Disputed Documents Claimed to be exempt under FOIA Exemption 1 only**

 **Item 1**.  Doc. W-9 (3 pages) - (b)(1) (partial) (Exh. A #1).  Defendant claims that the

document is a "draft" memorandum, but no (b)(5) exemption has been asserted.  Defendant

withholds only "a portion of the second paragraph" of the three-page memorandum, on the

ground that it "discusses the sensitive issues raised in our diplomatic notes, issues which

remain unresolved in the absence of any reply by Mexico to those notes."  Walter Decl. #1

¶60 (p. 21).  According to defendant, release of the note "could compromise further

negotiations and damage our foreign relations" (*id*.), but that contention, even if plausible,

comes too late.  The State Department released the relevant Diplomatic Note to TSCL

regarding the Totalization Agreement — the only such note, as far as TSCL knows (Exh. B

(Olson Decl.) ¶8), which was written at the time the Totalization Agreement was signed[14] —

and that was eight years ago.  What has transpired, it would appear, is some back and forth

about the meaning of the Diplomatic Note, including a Mexican refusal to accept the

interpretation of the United States regarding the meaning of the Diplomatic Note.  The facts

regarding this issue should not be withheld from the American people, who have been told for

many years now that the Totalization Agreement was signed subject to the interpretation of that

Agreement set forth in the Diplomatic Note.  To the extent that the government did not wish

---

[14]      If there is more than one such diplomatic note, it should have been provided in
response to TSCL's FOIA request.

19

the existence of any such issue to be made known, any such argument is made too late in light

of the fact that the Diplomatic Note was made public in 2006.  *See* Exh. B (Olson Decl.) ¶8.

A similar issue exists with respect to the next five of the disputed documents (Exh. A,

## 2, 12, 14, 15, and 16, respectively):

**Item 2**.  W-49 (4 pages) - (b)(1) (in part), Walter Decl. #1 ¶¶ 71-72 (p. 24) (Exh. A

#2);

**Item 3**.  O-36 (4 pages) - (b)(1) (in full), Walter Decl. #1 ¶¶ 141-42 (pp. 43-44) (Exh.

A #12);

**Item 4**.  LV-7A (5 pages) - (b)(1) (in full), Walter Decl. #1 ¶¶ 153-54 (p. 48) (Exh. A

#14);

**Item 5**.  18A (15 pages) - (b)(1) (in full), Zimmerman Decl. ¶9, p. 3; Vaughn Index p.
4, Walter Decl. #2 ¶¶ 5, 7-8 (Exh. A #15);

**Item 6**.  18B (4 pages) - (b)(1) (in full), Zimmerman Decl. ¶9, p. 3; Vaughn Index p.
4, Walter Decl. #2 ¶¶ 6-8 (Exh. A #16).

Each of these documents appears to contain information regarding the meaning of the

Totalization Agreement, as interpreted in the Diplomatic Note.  Document O-36, for example,

is a four-page telegram said to be "a response to a request from Mexican officials for

additional clarifications regarding the effect of certain U.S. legal provisions on implementation

of the totalization agreement."  Walter Decl. #1 ¶142.  Having released the Diplomatic Note

— which purports to set forth the U.S. position regarding the interpretation of the agreement

— the State Department cannot reasonably take the position that its subsequent pronouncement

on that meaning is classified and exempt from disclosure under FOIA.[15]  The explanation

regarding Document LV-7A, said to be "nearly identical" to Document O-36, is even more

perplexing.  Walter Decl. #1 ¶154.  That document indicates that there is more than one

diplomatic note in play, despite the fact that TSCL has been given only one and the others —

possibly two more — have never previously been given to TSCL or identified in this litigation.

*See* Exh. B (Olson Decl.) ¶ 8.  According to defendant, Document O-36 was "originally

unclassified."  Perhaps it was classified "CONFIDENTIAL" for purposes of this FOIA action.

*See* Walter Decl. #1 ¶153.  TSCL was unable to determine from the papers filed by defendant

any specific time frame for such classification designations.  If Document O-36 — as well as

any other of the disputed documents that were originally unclassified — was reclassified as

"confidential" for purposes of keeping them out of the hands of TSCL and the American

public, TSCL submits that the defendant should be required to justify that change in viewpoint

leading to the reclassification.

   The government's explanations regarding **Document 18A** (15 pages) and **Document**

**18B** (4 pages) also seem to lack a persuasive rationale regarding the claim that they are

protected by FOIA Exemption 1.  *See* Zimmerman Decl. ¶9., p. 3; Walter Decl. #2 ¶¶ 5-8.

Both are said to be "drafts," although no (b)(5) exemption has been claimed, and both are said

to "discuss the provisions and administrative arrangements made in the course of negotiating

the final text of the U.S.-Mexico Totalization Agreement."  Walter Decl. #2 ¶7.  And

---

[15]     Of course, Document O-36 originally was "UNCLASSIFIED."  Walter Decl.
#1 ¶141.  It is now said to be classified "CONFIDENTIAL," a classification that may have
been made for purposes of this litigation.

21

Document 18A contains minutes of discussions.  *Id*.  The meetings were said to have been

conducted "with an explicit agreement of confidentiality."  *Id*.  Although this appears to have

occurred just prior to the signing of the Totalization Agreement, not a single sentence of these

draft "provisions and administrative arrangements" could be released without disclosing

protected information.  *Id*. ¶¶ 7-8.  It is difficult to take specific factual issue with such

assertions, since no part of these documents has been released.  However, drafts of documents

that were later finalized and signed by the parties should be disclosed, at least in part, to better

explain to the American people what the Diplomatic Note means.  Furthermore, the

descriptions of these same two documents, as set forth in the Zimmerman and Walter

Declarations, are quite dissimilar.  *Compare* Walter Decl. #2 ¶7 with Zimmerman Decl. ¶9.,

p. 3.

**Disputed Documents Claimed to be exempt under FOIA Exemptions 1 and 5 —
Defendant's Exemption 1 Claims**

In addition to the six disputed documents discussed above, the State Department has

withheld six additional documents which it claims are covered not only by Exemption 1, but by

FOIA Exemption 5 as well.  The Exemption 1 claims regarding such documents, which are

subject to the same overbreadth problem already discussed above, should be overruled for the

following reasons:

**Items 7-12.**  These items, which are described as e-mail exchanges during the months

of January-February 2011, concern communications among State Department employees or

communications between State Department employees and other agencies regarding issues as to

the interpretation of the Totalization Agreement and/or the Diplomatic Note.  The specific disputed documents in question are the following:

**Item 7.**   H-7 (3 pages) - (b)(1), (b)(5) (in part), Walter Decl. #1, ¶¶ 83-84 (p. 28) (Exh. A #3).  Although originally UNCLASSIFIED, this 2011 e-mail exchange is "currently classified CONFIDENTIAL in part."  It discusses "how a totalization agreement would affect workers in the United States and Mexico and the need for coordination between the social security offices of the two countries" and the withheld portion is said to discuss "tactics with regard to negotiations for an agreement."  But these e-mails were exchanged almost seven years after the Totalization Agreement was signed, making defendant's assertions difficult to comprehend.  There appears to be no issue of an agreement with any other country.

**Item 8.**   H-9 (5 pages) - (b)(1), (b)(5) (in full), Walter Decl. #1, ¶¶ 87-88 (pp. 29-30) (Exh. A #4).  It appears that the only material claimed to be withheld under exemption (b)(1) is based upon a promise of confidentiality to a Mexican official.  Even if that claim is confirmed by a review of the document, it is not apparent why some of the information (a reasonably segregable portion) could not be disclosed.

**Item 9.**   H-10 (4 pages) - (b)(1), (b)(5) (in full), Walter Decl. #1, ¶¶ 89-90 (p. 30) (Exh. A #5).  The only material withheld under (b)(1) has to do with "requirements for dialogue with Mexican officials and tactics for minimizing difficulties in going in separate directions with totalization negotiations with two different countries."  Again, even if review of the document confirms that description, it is not apparent why some of the information (a reasonably segregable portion) should not be disclosed.  TSCL is not seeking information about negotiations with any other country, and the Totalization Agreement with Mexico has

been negotiated, signed, and released.  Moreover, the Diplomatic Note concerning its

interpretation has been publicly disclosed.  Information regarding that interpretation, including

the need for that interpretation, should not properly be deemed confidential under FOIA

Exemption 1.

Item 10.  H-11 (4 pages) - (b)(1), (b)(5) (in part), Walter Decl. #1, ¶¶ 91-92 (pp. 30-

31)  (Exh. A #6).  These e-mail messages are said to discuss a "draft issue paper" although

such an issue paper does not appear to be included in the document.  The (b)(1) claim

apparently rests on the idea that certain "next steps to be followed if the agreement were

eventually to be presented to Congress" — information that TSCL submits would **not** be

subject to a FOIA exemption — "would presumably include further negotiations with

Mexico."  That presumption is certainly debatable.  The Totalization Agreement has been

signed.  If the President now were to approve it and present it to Congress, it is not clear why

there would need to be any further negotiations with Mexico.  But even if such negotiations

were to follow, defendant has not put forth a valid reason to exclude Document H-11 because

of FOIA Exemption 1.  Certainly, for example, to the extent that Document H-11 explains the

basis for the need for any further negotiations, that information should be disclosed to the

public.

Item 11.  H-13 (1 page) - (b)(1), (5) (in full), Walter Decl. #1, ¶¶ 93-94 (pp. 31-32)

(Exh. A #7).  Again, defendant refers to the discussion of "requirements for dialogue with

Mexican officials" — which would not appear to be exempt — and "tactics for minimizing

difficulties in going in separate directions with totalization negotiations with two different

countries" which may or may not be exempt.  To the extent that the State Department is

24

referring to negotiations with other countries, of course, that part of the document might not even be responsive to TSCL's FOIA request, but it is not apparent why a reasonably segregable portion could not be disclosed.

**Item 12.**   H-14 (2 pages) - (b)(1), (b)(5) (in full), Walter Decl. #1, ¶¶ 95-96 (p. 32) (Exh. A #8).   These withheld e-mails are said to discuss "the current status of separate totalization agreements with two countries."   It is not apparent why FOIA Exemption 1 would apply to that disclosure.   Although there may be reason to withhold a portion of the document, insofar as it would reveal "tactics" regarding future negotiations, defendant's exemption claim under (b)(1) appears to be too broadly applied.

## IV.   THE DELIBERATIVE PROCESS EXEMPTION — FOIA EXEMPTION 5 — DOES NOT APPLY AS BROADLY AS CLAIMED BY DEFENDANT

Defendant maintains that most of the withheld records responsive to TSCL's request need not be disclosed because they are deliberative and pre-decisional inter-agency memoranda or other such communications, and that withholding them from the public is countenanced by FOIA exemption (b)(5), 5 U.S.C. §552(b)(5) (also "Exemption 5").   It has made that claim with respect to 13 of the 19 disputed documents; seven of them (Exh. A ## 9-11, 13, and 17-19) have been withheld exclusively because of the Exemption 5 claim, and six of them (Exh. A ## 3-8) have been withheld on the theory that both Exemption 1 and Exemption 5 apply. TSCL submits that Exemption 5 does not apply at all to at least certain of the documents or portions of documents claimed by the State Department, and that, even if some of the documents arguably could be withheld under Exemption 5, they should not be under the facts of this case.

25

The Supreme Court has construed Exemption 5 to "exempt those documents, and only those documents, that are normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). Accordingly, while the exemption has been held to encompass the attorney work-product, attorney-client, and deliberative process privileges, see, e.g., Sears, supra, Coastal States Gas Corp. v. DOE, 617 F.2d 854 (D.C. Cir. 1980), defendant must prove two distinct elements with respect to each such document or record for which Exemption 5 is claimed. As the Supreme Court has put it, "to qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Department of the Interior v. Klamath Water Users Protective Association, 532 U.S. 1, 8 (2001).

The State Department claims that 13 of the documents it seeks to withhold from disclosure are protected, in whole or in part, by the deliberative process privilege.[16] But the deliberative process privilege shields from mandatory disclosure only communications that are both (i) "predecisional," i.e., that were made during agency consideration of a proposed action — not those incorporated in or made after the decision, see NLRB v. Sears, 421 U.S. at 151-52, and (ii) "deliberative," in that they "make recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). See also Mapother v. Department of Justice, 3 F.3d 1533, 1539-40 (D.C. 1993). As discussed below,

---

[16]    Technically, the State Department has itself claimed no FOIA exemption regarding Documents 18C, 18D, and 18E. The (b)(5) exemption claim as to those records is advanced only by the Social Security Administration. See Zimmerman Decl. ¶9.

26

the disputed documents for which defendant claims Exemption 5 do not appear to meet the "deliberative" test.  Rather, they appear to be explanatory.[17]  The privilege — properly asserted — serves to insure open, uninhibited, and robust debate of various options by eliminating the fear of disclosure of preliminary viewpoints.  *See* Coastal States, 617 F.2d at 866.  Thus, by shielding predecisional deliberations from public scrutiny, the quality of final governmental decisions presumably would be enhanced.  *See* NLRB v. Sears, 421 U.S. at 149-51.  However, absent a showing that the withheld documents are both predecisional and deliberative, they should be disclosed.  TSCL submits that defendant has failed to sustain its claim that the documents it seeks to withhold are either predecisional or deliberative.

A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made.  NLRB v. Sears, 421 U.S. at 151-52.  Certain of the documents withheld by the State Department do not appear to be predecisional, for example, for there is no description of any decision they supposedly precede.  As TSCL has already pointed out above, in most cases the documents concern the U.S./Mexico Totalization Agreement subsequent to its June 2004 signing.  Similarly, it is not clear that certain of the documents contain deliberative information, as defendant claims.  In addition, Exemption 5 does not always allow for entire documents to be withheld, and factual information that is not deliberative in nature must be

---

[17]        *See, e.g.,* Zimmerman Decl. ¶9, asserting that annotated agreements (Documents 18C and 18D) are deliberative because they have not yet been submitted to Congress or released to the public, and that Document 18E – extracting the main provisions of the Totalization Agreement likewise is deliberative because it would reveal employees' thought processes in selecting them.

disclosed.  *See* Mapother, 3 F.3d at 1538- 40.  Although it can be difficult, if not impossible,

for a FOIA requester to prove that an undisclosed document contains factual information that

should have been disclosed, the breadth of defendant's claim that various documents contain no

reasonably segregable disclosable information is difficult to accept.[18]

To be deliberative and pre-decisional, a document must be related to a policy decision.

*See* Petroleum Inf. Corp. v. U.S. Dept. of Interior, 976 F.2d 1429, 1435 (D.C. Cir. 1992).

And even pre-decisional recommendations, which would otherwise be exempt, lose the

protection of the privilege if an agency, in making a final decision, chooses expressly to adopt

them or incorporate them by reference.  Indeed, Exemption 5 does not apply in the case of

"final opinions" which explain agency action already taken or an agency decision already

made.  *See* NLRB v. Sears, 421 U.S. at 153-54.  Nor does the exemption protect a document

which is merely peripheral to actual policy formation, and does not "bear on the formulation or

exercise of policy-oriented judgment."  Ethyl Corp. v. EPA, 25 F.3d 1241, 1248 (D.C. Cir.

1994).  Asserting this exemption may require a recitation of the relevant facts concerning the

identity of the author of the document, as well as its recipients and persons within the

decisional hierarchy.  *Id*.  *See also* Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195

(D.C. Cir. 1991).  Where defendant claims a document is deliberative and predecisional, but

does not identify the finalized decision or demonstrate that one was not made, TSCL submits

that the claim is unsupported and the document must be disclosed.

---

[18]     *See, e.g.,* TSCL comments regarding Documents 18A and 18B (p. 18, *supra*)
and regarding Document H-16A (p. 28, *supra*).  *See also* Part V, *infra*, pp. 34-36.

28

In this case, the State Department has argued that Exemption 5 bars disclosure of most of the disputed documents.  Although no particular reason is advanced with respect to most of the claims, from time to time the government declarant offers a reason, such as "its release would inhibit future deliberations of this nature (Walter Decl. #1 ¶140), and "disclosure would reveal the reasoning, recommendations, and analysis of SAS employees during the deliberative stages of a policy matter" (Zimmerman Decl. ¶9).  *See generally* Walter Decl. #1 ¶45. Defendant's argument is unpersuasive, and it is demonstrably faulty, or at least unsupported by sufficient facts, as TSCL has attempted to point out in this memorandum.

In general, the courts have determined that a document is "deliberative" when it is related in fact to the process by which the particular policy was formulated.  *See, e.g.*, Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); Hopkins v. U.S. Department of Housing and Urban Development, Hopkins, 929 F.2d 81, 84 (2d Cir. 1991).   Other courts have looked at similar factors such as whether the document (i) formed a critical or essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency.  *See, e.g.,* Providence Journal Co. v. United States Dep't of the Army, 981 F.2d 552, 559 (1st Cir. 1992).  Thus, the privilege normally has to do with documents which reflecting opinions, recommendations and deliberations that are part of a process by which governmental decisions and policies are formulated.  *See* NLRB v. Sears, 421 U.S. at 150.  However, if the document reflects the decision or policy that was adopted, there is no basis for withholding it under Exemption 5.  *See id.*, 421 U.S. at 152-53.

29

Even if a record is partially exempt under the deliberative process exemption, moreover, that exemption does not reach "purely factual" material.  EPA v. Mink, 410 U.S. at 87-88 ("memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery").[19]

With these principles in mind, defendant's claim of pre-decisional, deliberative communications, descriptions, and representations concerning the documents should be carefully examined.  See Walter Decl. #1 ¶¶ 83-84, 87-100, 139-140, 143-144; Zimmerman Decl. ¶ 9.

**Disputed Documents Claimed to be exempt under FOIA Exemption 5 only**

Defendant claims that seven documents — Items 13-19 below — are exempt from disclosure solely on the basis of Exemption 5.  TSCL disagrees, and submits that all of those documents, in whole or in part, should be disclosed.

---

[19]     There is no legal impediment to discretionary release of information which technically could be withheld under FOIA Exemption 5.  In the case of FOIA Exemption 5, the entire matter should be determined by weighing the public interest in obtaining the information against any likely detriment in light of the information being released.  In this case, any such detriment to the government is hard to imagine based upon what the State Department has argued thus far.  Moreover, the State Department would have no legitimate concern that in exercising its administrative discretion with respect to particular information it would be impairing its ability to invoke applicable FOIA exemptions for any arguably similar information in the future.  See, e.g., Military Audit Project v. Casey, 656 F.2d 724, 754 (D.C. Cir. 1981) (reasoning that an agency should not be penalized for declassifying and releasing documents during litigation; otherwise, there would be "a disincentive for an agency to reappraise its position and, when appropriate, release documents previously withheld"); Mobil Oil Corp. v. EPA, 879 F.2d 698 (9th Cir. 1989).  See also Mehl v. EPA, 797 F. Supp. 43, 47 (D.D.C. 1992).

30

**Items 13-16.**  Each of these items involves communications among State Department representatives during periods after the Totalization Agreement had been approved and/or signed.  The State Department argues that they are deliberative or pre-decisional, but the defendant's very descriptions of the documents reveal that there is information that should be disclosed under FOIA.

**Item 13.**  H-16A (2 pages) - (b)(5) (in full), Walter Decl. #1, ¶¶ 97-98 (pp. 32-33) (Exh. A #8).  This is described as a "draft issue paper" by a State Department employee, apparently in mid-February 2011.  According to the State Department, the document "reports on the status of the agreement with another country, and refers to the earlier negotiations with Mexico."  It also "provides data on the country's economy" and "reports on totalization agreements recently signed with four other countries." *See* Walter Decl. #1 ¶98.  This document appears to contain at least a certain amount of factual reporting, including statements of fact relative to the status of the U.S/Mexico Totalization Agreement, or other aspects of the agreement.  Yet, the entire document has been withheld under Exemption 5.

**Item 14.**  H-16B (2 pages) - (b)(5) (in full), Walter Decl. #1 ¶¶ 99-100 (p. 33) (Exh. A #8).  Although said to be a "draft," this document "defines a totalization agreement and provides the history of negotiations with Mexico and the failure of the Social Security Administration to forward the draft agreement for approval by the White House and the Congress."  Walter Decl. #1 ¶100.  Surely, such reports and factual statements are not exempted from disclosure under FOIA Exemption 5.

**Item 15.**  O-28 (5 pages) - (b)(5) (in part), Walter Decl. #1 ¶¶ 139-40 (p. 43) (Exh.

31

A #10).  According to defendant, this State Department inter-departmental memo, dated June 28, 2004, discloses (in the final paragraph) the recommendation that the totalization agreement be signed, but, on the theory that the rest of the document is "pre-decisional," redacts everything else, including the history of the negotiations, as well as certain legal aspects of the agreement, under the (b)(5) exemption.  *See* Walter Decl. #1 ¶ 140.  It is not clear why the deliberative process exemption would apply here.  The fact that certain legal ramifications of the agreement are stated should not, by itself, exempt the document from disclosure, particularly if the matters in question are statements of the law.

Item 16.  O-37 (1 page) - (b)(5) (in full), Walter Decl. #1 ¶¶ 143-44 (p. 44) (Exh. A #12).  This document is said to be a State Department inter-divisional email discussing "aspects of the White House position on sending the totalization agreement to Congress for its review, and possible later requirements for Consular Affairs action."  Exemption is claimed under (b)(5), but the description of the document's contents does not appear to justify that claim.  At the time in question (March 2005), the Totalization Agreement had been signed, and the process for sending an approved agreement to Congress should not be considered secret. Yet, the entire document has been redacted.

**Items 17-19**.  These three documents were part of the group referred to the Social Security Administration ("SSA"), which the State Department apparently did not object to disclosing, but which SSA claimed were exempt under Exemption 5.  *See* Zimmerman Decl. ¶9.  TSCL submits that the government's (b)(5) claim is unfounded and that the documents should be disclosed.

According to SSA, these documents are annotated versions of the U.S./Mexico Totalization

Agreement, and the Administrative Agreement accompanying the Totalization Agreement, both

of which have been made public.  TSCL submits that defendant has offered no persuasive

rationale for refusing to disclose the annotated versions of the Totalization Agreement — which

defendant admits will be made available to Congress when the Totalization Agreement is

forwarded for Congressional review, and to the public if Congress approves (or does not

disapprove) the Agreement.  Zimmerman Decl. ¶9, pp. 9-10.

Item 17.  18C (34 pages) - (b)(5) (in full), Zimmerman Decl. ¶9., pp.3-4; Vaughn

Index p. 5 (Exh. A #16).  According to SSA, this annotated agreement "is prepared for

Congress and released to the public after Congress approves the agreement."  Zimmerman

Decl. ¶9, p. 10.  SSA claims that, since the Totalization Agreement has not yet been

transmitted to Congress for approval, the annotated agreement should not be disclosed because

it would "reveal employees' analyses regarding the interpretation of various parts of the

documents prior to Congress' approval of the agreement."  *Id*.  But Congress has no role in

editing or amending the agreement.  The items in question do not appear to be deliberative or

pre-decisional; the decision has been made, and the Totalization Agreement has been signed.

The annotations would not change depending upon the date the Totalization Agreement is

transmitted to Congress.  The annotated agreement is ripe for disclosure now.

Item 18.  18D (5 pages) - (b)(5) (in full), Zimmerman Decl. ¶9., pp.3-4; Vaughn Index

p. 6 (Exh. A #17).  This is the annotated version of the Administrative Agreement.  The

arguments are the same as those set forth above with respect to the annotated Totalization

Agreement itself, Document 18C.

33

**Item 19.**   18E (3 pages)- (b)(5) (in full), Zimmerman Decl. ¶9., pp.3-4; Vaughn Index

p. 7 (Exh. A #18).   Defendant has made virtually no showing that this document — said to

contain the Main Provisions of the Totalization Agreement — should not be disclosed.

Although Exemption 5 is claimed, there is no allegation that the document contains any item

that could reasonably be called deliberative or pre-decisional.  It would appear that the

document merely extracts certain provisions from the Totalization Agreement.  The fact that

this kind of document normally is transmitted to Congress after the President approves the

totalization agreement should not entitle the document to exemption under FOIA Exemption 5

as claimed by defendant.  The document should be disclosed.

TSCL submits that there is no legitimate FOIA Exemption 5 ground on which to refuse

to disclose the documents in question.  Although the precise dates of the documents have not

been disclosed, the annotated versions of the Totalization Agreement and the Administrative

Agreement would appear to have been prepared simultaneously with or subsequent to the

actual signing of the agreements, not "during the deliberative stages of a policy matter," as

alleged by defendant.  *See* Zimmerman Decl. ¶9.  It is important to note, moreover, that these

documents are documents that are planned to be disclosed to the public.  *See id.*  The

government's view that it has a right to withhold disclosure under FOIA until such time as it

decides to submit the Agreement for Congressional review would appear to be contrary to the

letter and the spirit of FOIA.

**Disputed Documents Claimed to be exempt under both FOIA Exemptions 1 and 5 —
Defendant's Exemption 5 Claims**

In addition to the seven disputed documents discussed above, the State Department has

withheld six additional documents which it claims are covered by both Exemption 5 and

Exemption 1.  The Exemption 1 claim with respect to these documents (Items 7-12, Exh. A ##

3-8) has been discussed above (pages 21-24, *supra*).  The Exemption 5 claims pertaining to

such documents, and the reasons for disallowing such claims and ordering the documents to be

disclosed, are as follows:

**Item 7.**  H-7 (3 pages) - (b)(1), (b)(5) (in part), Walter Decl. #1, ¶¶ 83-84 (p. 28)

(Exh. A #3).  The supposedly "pre-decisional and deliberative" information withheld by

defendant includes a discussion of "possible workload and implications of totalization

agreements under various scenarios."  This kind of information does not appear to match

defendant's characterization.  First of all, the information concerns a signed totalization

agreement.  Statements of fact — even if they are estimates — are not excluded under

Exemption 5.  The fact that different "scenarios" could come to pass should provide no gloss

that would prevent this kind of information from being disclosed.

**Item 8.**  H-9 (5 pages) - (b)(1), (b)(5) (in full), Walter Decl. #1, ¶¶ 87-88 (pp. 29-30)

(Exh. A #4).  Defendant claims that the e-mails in question discuss "negotiating tactics plus the

advantages and disadvantages of using different approaches to totalization agreement

negotiations with different countries."  It is possible that those discussions involve specific

countries and agreements, but it is also possible that they are more general in nature, in which

case they should be disclosed.  In other words, at least where the discussion does not concern a

particular proposed agreement, there is no basis for withholding the information in question.

Moreover, even if a review of the document should reveal a pre-decisional discussion, it is not

apparent why some of the information (a reasonably segregable portion) could not be

disclosed.

**Item 9.**   H-10 (4 pages) - (b)(1), (b)(5) (in full), Walter Decl. #1, ¶¶ 89-90 (p. 30)

(Exh. A #5).  The document has been withheld under (b)(5) because it apparently has to do

with "the connections, if any, between negotiations of totalization agreements with two

different countries."  It is not clear why such information would be considered pre-decisional,

as it appears to be factual in nature.  But even if review of the document confirms that some of

the information need not be disclosed, it is not apparent why a reasonably segregable portion

could not be disclosed.  TSCL is not seeking information about specific negotiations with any

other country.

**Item 10.**   H-11 (4 pages) - (b)(1), (b)(5) (in part), Walter Decl. #1, ¶¶ 91-92 (pp. 30-

31) (Exh. A #6).  These e-mail messages are said to discuss a "draft issue paper" although

such an issues paper does not appear to be included in the document.  The withheld material

appears to include information about certain "next steps to be followed if the agreement were

eventually to be presented to Congress" — information that TSCL submits would **not** be

subject to a FOIA exemption.  The (b)(5) exemption claim is advanced because the withheld

material includes "discussion of tactics to be used."[20]  It is difficult to know in the abstract

what such language means.  However, if the information lists certain "next steps" that would

---

[20]      There is also a (b)(6) claim, but TSCL has not disputed that claim and does not
seek the information sought to be protected by that claim.

be followed in connection with presentation of the agreement to Congress, that information should not be considered exempt from disclosure.

**Item 11.** H-13 (1 page) - (b)(1), (5) (in full), Walter Decl. #1, ¶¶ 93-94 (pp. 31-32) (Exh. A #7). Defendant's (b)(5) exemption claim rests upon the notion that certain "draft talking points" are "pre-decisional and deliberative in character." That is an argument that is difficult to appreciate without seeing the document in question, but it is not apparent why some of the information (a reasonably segregable portion) could not be disclosed. Certainly, for example, any "draft talking points" would contain factual assertions that are not subject to the claimed exemption.

**Item 12.** H-14 (2 pages) - (b)(1), (b)(5) (in full), Walter Decl. #1, ¶¶ 95-96 (p. 32) (Exh. A #8). These withheld e-mails are said to discuss "the current status of separate totalization agreements with two countries." It is not apparent why FOIA Exemption 5 would apply to disclosure of such information. Although there may be reason to withhold a portion of the document, insofar as it would reveal "tactics" regarding future negotiations, defendant's exemption claim under (b)(5) appears to be too broadly applied.

## V.   DEFENDANT HAS NOT DEMONSTRATED SUFFICIENT REASON FOR EXCLUDING REASONABLY SEGREGABLE PORTIONS OF THE WITHHELD RECORDS

Factual material must be segregated from opinion material and released in an FOIA case. EPA v. Mink, 410 U.S. 73, 89 (1973). When a requested document contains some information which falls under one of the exemptions, the FOIA requires that all non-exempt portions of the record must still be released. The Act expressly mandates that any "reasonably segregable portion" of a record must be disclosed to a requester after the redaction (the

deletion of part of a document to prevent disclosure of material covered by an exemption) of the parts which are exempt.  5 U.S.C. § 552(b).  This is an important aspect of FOIA because it prohibits an agency from withholding an entire document merely because one line, one page, or one picture is exempt.

As already indicated above, with respect to most of the disputed documents, the State Department has taken the position that "[t]here is no non-exempt information that may be segregated or released" (e.g., Walter Decl. #1 ¶88) or words to that effect with respect to all of the disputed documents that have been withheld in full.[21]  See also Walter Decl. #1 ¶¶ 90, 94, 96, 98, 100, 142, 144, 154; Walter Decl. #2 ¶¶7-8.  That conclusory allegation is difficult to disprove without examining the documents, of course, but, even based on defendant's document descriptions, it appears to have been too broadly asserted in this case.

Under the FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b); Kimberlin v. Dep't of Justice, 139 F.3d 944, 951 (D.C. Cir. 1998).  The principal factors utilized by courts in determining what is reasonably segregable are the intelligibility of the nondeleted material and the extent of the burden of editing or segregating it.  Yeager v. DEA, 678 F.2d 315, 322 & n.16 (D.C. Cir. 1982).

The duty to release information that is "reasonably segregable," as set forth in 5 U.S.C. section 552(b), applies in cases involving classified information as well as those involving nonclassified information.  See, e.g., Oglesby v. United States Dep't of the Army,

---

[21]     The Social Security Administration did not expressly make that claim with respect to Documents !8C, 18D and 18E.  See Zimmerman Decl. ¶9.

920 F.2d 57, 66 n.12 (D.C. Cir. 1990) (dictum) (noting failure of Army affidavit to specify

whether any reasonably segregable portions of 483-page document were withheld pursuant to

Exemption 1); Ray v. Turner, 587 F.2d 1187, 1197 (D.C. Cir. 1978) (remanding for greater

specificity in affidavit because agency may not rely on "exemption by document" approach

even in Exemption 1 context).  In more recent years, the D.C. Circuit reemphasized the

FOIA's segregation requirement in a series of decisions, including cases regarding records

withheld pursuant to Exemption 1.  *See* Trans-Pac. Policing Agreement v. United States

Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999); Kimberlin v. Dep't of Justice, 139

F.3d 944, 950 (D.C. Cir. 1998); Army Times Publ'g Co. v. Dep't of the Air Force, 998 F.2d

1067, 1068, 1071-72 (D.C. Cir. 1993); PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 252-53

(D.C. Cir. 1993); Schiller v. NLRB, 965 F.2d 1205, 1210 (D.C. Cir. 1992).  In Krikorian v.

Dept. of State,  984 F.2d 461, 467 (D.C. Cir. 1993), the D.C. Circuit, although upholding the

district court's substantive determination that the records contained information qualifying for

Exemption 1 protection, nonetheless remanded the case to the district court because it had

failed to "make  specific findings of segregability for each of the withheld documents." *See*

*also* Greenberg v. United States Dep't of Treasury, 10 F. Supp. 2d 3, 14-15 (D.D.C. 1998)

(ordering that CIA "more specifically" explain in a subsequent Vaughn Index why portions of

records withheld in full are not reasonably segregable).  In another case, the D.C. Circuit

observed that although the agency might have been "aware of its duties under FOIA to disclose

all nonsegregable information," it did not provide the court with an "adequate explanation" on

which to base such a finding. Oglesby, 79 F.3d at 1181, remanding the case to the district

court for a more detailed description of the information withheld.  *Id.  See also* Wiener v. FBI,

943 F.2d 972, 988 (9th Cir. 1991) (summary judgment in favor of FBI reversed where, *inter alia*, there were insufficient findings on the issue of segregability).

The defendant appears to have failed to make the required segregability claim with respect to its complete withholding of Documents 18A, 18B and 18C.  In addition, TSCL submits that the defendant's blanket non-segregability claim with respect to the other disputed documents that were withheld *in toto* is subject to serious questioning, hopefully by the Court during its *in camera* review.  To the extent that the Court determines that additional disclosures should have been made, such documents should be provided to TSCL.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment should be denied, allowing the plaintiff's motion for *in camera* review to be granted and all non-exempt records responsive to TSCL's FOIA request to be ordered disclosed.

<div style="margin-left: 50%;">

  /s/
WILLIAM J. OLSON
(D.C. Bar No. 233833)

  /s/
JOHN S. MILES
(D.C. Bar No. 166751)

HERBERT W. TITUS
JEREMIAH L. MORGAN
ROBERT J. OLSON
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA  22180-5615
703-356-5070 (telephone)
703-356-5085 (fax)
wjo@mindspring.com
Counsel for Plaintiff,
TREA Senior Citizens League

</div>