**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TREA SENIOR CITIZENS LEAGUE,

         Plaintiff,

         v.

U.S. DEPARTMENT OF STATE,

         Defendant.

Civil Action No. 10-1423 (BAH)

Judge Beryl A. Howell

**MEMORANDUM OPINION**

The plaintiff, TREA Senior Citizens League, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to challenge the response of the defendant, the U.S. Department of State (the "State Department"), to the plaintiff's FOIA request for records pertaining to the Social Security Totalization Agreement between the United States and Mexico (the "Totalization Agreement"). The State Department withheld certain records responsive to the plaintiff's request under exemptions to the FOIA, and the plaintiff contends that the exemptions claimed are insufficient and urges the Court to order the release of all withheld records. Pending before the Court is the defendant's renewed motion for summary judgment and the plaintiff's motion for *in camera* review.

## I.    BACKGROUND

The plaintiff is "a nonprofit, tax-exempt organization, and one of the largest nonpartisan seniors organizations in the nation." Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 1, ECF No. 32. On July 7, 2008, the plaintiff submitted a FOIA request to the defendant, seeking nineteen specific categories of State Department records "created between January 1, 2001 and [July 7, 2008] concerning or relating to the agreement between the United States and Mexico which would provide, in some manner, for the payment of U.S. Social

1

Security benefits to Mexican nationals."  Compl. Ex. A, ECF No. 1-1.  This request also sought a

fee waiver and expedited processing.  *See id.* at 5–6.  The Totalization Agreement in question

was signed by the United States and Mexico in June 2004, but it has not yet taken effect because

it has not been ratified by the United States Senate.  *See* Def.'s Mem. of P. & A. in Supp. of

Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 1, ECF No. 30; *see also* Decl. of William J. Olson

("Olson Decl.") Ex. 1, ECF No. 32-3 (copy of the Totalization Agreement).[1]  The defendant

previously released the text of the Totalization Agreement, as well as a Diplomatic Note

interpreting the agreement, in 2006 in conjunction with previous FOIA litigation.  *See* Olson

Decl. ¶ 8, ECF No. 32-2.

On April 17, 2009, the defendant acknowledged receipt of the plaintiff's request and

notified the plaintiff that the defendant would begin processing the request and would notify the

plaintiff "as soon as responsive material has been retrieved and reviewed."  Decl. of Sheryl L.

Walter, Dir. of the Office of Info. Programs & Servs. ("IPS") ("First IPS Decl.") Ex. 5, at 1, ECF

No. 30-1 (Apr. 5, 2012).  This April 17, 2009 letter also notified the plaintiff that its fee waiver

request was granted, but its request for expedited processing was denied.  *See id.* at 3–4.  On

September 28, 2009, over fourteen months after the plaintiff originally submitted its FOIA

request, the defendant notified the plaintiff that the agency had initiated searches of several State

Department offices and that the plaintiff would be notified once "all of the search and review

processes have been completed."  First IPS Decl. Ex. 7, at 1, ECF No. 30-1.  On February 17,

2010, the plaintiff, having not received any final determination from the defendant, attempted to

file an administrative appeal, seeking administrative review of the defendant's failure to respond

---

[1] As the plaintiff explains, "[a] totalization agreement is an international social security agreement (between the U.S. and another country) that is supposed to coordinate the U.S. Social Security program with a comparable program of the other country."  Pl.'s Opp'n at 3 n.2.  *See generally* U.S. Soc. Sec. Admin., U.S. International Social Security Agreements, http://www.ssa.gov/international/agreements_overview.html#a0=0 (last updated July 20, 2012) (providing overview of totalization agreements).

to the plaintiff's request.  *See* First IPS Decl. Ex. 8, ECF No. 30-1.  The defendant responded to

this "appeal" on February 24, 2010, notifying the plaintiff that "[y]our FOIA request is not

subject to administrative appeal at this time, since no specific material has been denied in

response to the request."  First IPS Decl. Ex. 9, at 1, ECF No. 30-1.  The defendant's February

24, 2010 letter also notified the plaintiff that, under the FOIA, the plaintiff had constructively

exhausted its administrative remedies and could file suit in federal court if it chose to do so.  *See*

*id.*  Having constructively exhausted its administrative remedies, due to the defendant's failure to

provide a final determination on the plaintiff's FOIA request within twenty working days, *see* 5

U.S.C.§ 552(a)(6)(C), the plaintiff filed its Complaint in the instant action on August 24, 2010.

    After the plaintiff initiated the instant action, the defendant sent nine more letters to the

plaintiff between December 7, 2010 and March 15, 2012, which (1) notified the plaintiff each

time the defendant had completed more searches in response to the plaintiff's request and

(2) released non-exempt, responsive records identified during each search.  *See* First IPS Decl.

Exs. 10–18, ECF No. 30-1.  After conducting searches of several State Department components,[2]

the defendant located 124 unique documents that were responsive to the plaintiff's FOIA request.

First IPS Decl. ¶ 181, ECF No. 30-1.  Of these, forty-four records were released in full, forty-

three were released in part with certain portions redacted, and twenty-one were withheld in full

under FOIA Exemptions 1, 5, and 6.  *Id.* ¶¶ 37–51, 181.  The remaining sixteen documents were

"referred to other government agencies for their review and direct reply to Plaintiff."  *Id.* ¶ 181.

In particular, the defendant referred one document to the Treasury Department, one document to

the Department of Homeland Security ("DHS"), two documents to the Government

---

[2] The components searched included:  the Bureau of Western Hemisphere Affairs; the Bureau of Economic, Energy, and Business Affairs; the Office of the Legal Adviser; the Bureau of Consular Affairs; the United States Embassy in Mexico City, Mexico; the Central Foreign Policy File; and retired files.  *See* First IPS Decl. ¶ 23.  The plaintiff does not contest the adequacy of the defendant's search efforts.  *See* Pl.'s Mem. at 9.

Accountability Office ("GAO"), and twelve documents to the U.S. Social Security

Administration ("SSA").  *See* Def.'s. Ex. D at 1, ECF No. 30-4.  Of these sixteen referred

records, three were released in full, five were withheld in full, and eight were determined to be

duplicates of previously released records.  *Id.*; *see also* Notice Concerning Referred Documents

at 1–2, ECF No. 21.[3]

     The defendant initially filed a motion for summary judgment on April 6, 2012, *see* ECF

No. 20, but later withdrew that motion, *see* ECF No. 29,[4] and subsequently filed a renewed

motion for summary judgment, *see* Def.'s Renewed Mot. for Summ. J., ECF No. 30.  After the

defendant filed its renewed motion for summary judgment, the plaintiff filed a motion for *in*

*camera* review of the nineteen documents withheld in whole or in part that remain contested.

*See* Pl.'s Mot. for *In Camera* Review, ECF No. 33.  The defendant's renewed motion for

summary judgment and the plaintiff's motion for *in camera* review are currently pending before

the Court.  For the reasons discussed below, the Court denies the plaintiff's motion for *in camera*

review and grants in part and denies in part the defendant's renewed motion for summary

judgment.

## II.   LEGAL STANDARD

     Congress enacted the FOIA to promote transparency across the government.  *See* 5

U.S.C. § 552; *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech.*, 775 F. Supp.

2d 174, 179 (D.D.C. 2011).  The Supreme Court has explained that the FOIA is "a means for

citizens to know 'what their Government is up to.'  This phrase should not be dismissed as a

---

[3] Although the sixteen referred records did not originate with the defendant, the defendant has "accepted, in the circumstances of this case, that it has an obligation to account for the sixteen referred documents."  Def.'s Mem. at 9.

[4] The initial summary judgment motion did not address all the documents that had been referred by the State Department to other federal agencies, and the Court therefore directed that the State Department file a summary judgment motion that addressed all of the documents at issue to avoid piecemeal litigation in this case.  *See* Minute Order dated May 14, 2012.

convenient formalism.  It defines a structural necessity in a real democracy." *Nat'l Archives &*

*Records Admin. v. Favish*, 541 U.S. 157, 171–172 (2004) (citation and internal quotation marks

omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning

of a democratic society, needed to check against corruption and to hold the governors

accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978);

*see also SEC v. Am. Int'l Grp.*, No. 12-5141, 2013 WL 375650, at *1 (D.C. Cir. Feb. 1, 2013)

("The public has a fundamental interest in 'keeping a watchful eye on the workings of public

agencies.'" (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 905 (D.C.

Cir. 1996))).  As a result, the FOIA requires federal agencies to release all records responsive to

a request for production.  *See* 5 U.S.C. § 552(a)(3)(A).  Federal courts are authorized under the

FOIA "to enjoin the agency from withholding agency records and to order the production of any

agency records improperly withheld from the complainant."  *Id.* § 552(a)(4)(B).

　　　This strong interest in transparency must be tempered, however, by the "legitimate

governmental and private interests [that] could be harmed by release of certain types of

information."  *United Techs. Corp. v. U.S. Dep't of Defense*, 601 F.3d 557, 559 (D.C. Cir. 2010)

(internal quotation marks omitted); *see also Critical Mass Energy Project v. Nuclear Regulatory*

*Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc).  Accordingly, Congress included nine

exemptions permitting agencies to withhold information from FOIA disclosure.  *See* 5 U.S.C.

§ 552(b).  "These exemptions are explicitly made exclusive, and must be narrowly construed."

*Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011) (citations and internal quotation marks

omitted); *see also Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir.

2010) ("FOIA allows agencies to withhold only those documents that fall under one of nine

specific exemptions, which are construed narrowly in keeping with FOIA's presumption in favor

of disclosure." (citations omitted)).   When a FOIA requester properly exhausts its administrative

remedies, it may file a civil action challenging an agency's response to its request.   *See* 5 U.S.C.

§ 552(a)(4)(B); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).   Once such an action is filed,

the agency generally has the burden of demonstrating that its response to the plaintiff's FOIA

request was appropriate.   *See, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of

Press*, 489 U.S. 749, 755 (1989) (citing 5 U.S.C. § 552(a)(4)(B)).

When an agency's response to a FOIA request is to withhold responsive records, either in

whole or in part, the agency "bears the burden of proving the applicability of claimed

exemptions."   *Am. Civil Liberties Union v. U.S. Dep't of Defense* ("*ACLU*"), 628 F.3d 612, 619

(D.C. Cir. 2011).   "The government may satisfy its burden of establishing its right to withhold

information from the public by submitting appropriate declarations and, where necessary, an

index of the information withheld."   *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland

Sec.*, 852 F. Supp. 2d 66, 72 (D.D.C. 2012) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C.

Cir. 1973)).   "If an agency's affidavit describes the justifications for withholding the information

with specific detail, demonstrates that the information withheld logically falls within the claimed

exemption," and "is not contradicted by contrary evidence in the record or by evidence of the

agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."

*ACLU*, 628 F.3d at 619.   "Ultimately, an agency's justification for invoking a FOIA exemption is

sufficient if it appears 'logical' or 'plausible.'"   *Id.* (internal quotation marks omitted) (quoting

*Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## III.   DISCUSSION

As noted above, the plaintiff only challenges the defendant's decision to withhold, in

whole or in part, nineteen records that were responsive to the plaintiff's FOIA request, though a

total of sixty-nine responsive documents were withheld by the defendant, in whole or in part. *See* Pl.'s Opp'n at 6; First IPS Decl. ¶ 181; Def.'s. Ex. D at 1.[5]  Of these nineteen contested records, six were withheld in whole or in part solely under FOIA Exemption 1, seven were withheld in whole or in part solely under FOIA Exemption 5, and six were withheld in whole or in part under both FOIA Exemptions 1 and 5.  *See* Pl.'s Mot. for *In Camera* Review Ex. A at 2, ECF No. 33-2 (listing nineteen contested documents).  The Court will first discuss the defendant's withholdings under FOIA Exemption 1 before addressing the defendant's withholdings under FOIA Exemption 5.

### A.      Documents Withheld Under FOIA Exemption 1

FOIA Exemption 1 permits agencies to withhold information that is otherwise responsive to a FOIA request if it is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and is "in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  Executive Order 13,526 "prescribes a uniform system for classifying, safeguarding, and declassifying national security information."  Exec. Order 13,526, 75 Fed. Reg. 707, 707 (Dec. 29, 2009).  Executive Order 13,526 also provides that "information may be originally classified" if four conditions are met:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United Stated Government
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security . . . and the original classification authority is able to identify or describe the damage.

---

[5] These nineteen records total 106 pages.  *See* Mem. of P. & A. in Supp. of Pl.'s Mot. for *In Camera* Review at 3, ECF No. 33-1.

*Id.* § 1.1(a).  Section 1.4 of Executive Order 13,526 lists seven categories of information that

may be properly classified, including "foreign government information."  *See id.* § 1.4(b).  If an

agency sufficiently establishes that information satisfies the four criteria in Section 1.1(a) of the

Executive Order, the agency need not disclose such information in response to a FOIA request.

*See, e.g.*, *King v. U.S. Dep't of Justice*, 830 F.2d 210, 214 (D.C. Cir. 1987) ("An agency may

invoke [Exemption 1] only if it complies with classification procedures established by the

relevant executive order and withholds only such material as conforms to the order's substantive

criteria for classification.").

     As mentioned above, twelve of the nineteen contested documents were withheld in whole

or in part under FOIA Exemption 1.  The plaintiff objects to the defendant's withholding of these

documents and argues that "[t]he primary difficulty with the defendant's position in this case

regarding Exemption 1 has to do with the merits of the defendant's classification of the

documents it has withheld."  Pl.'s Opp'n at 16.[6]  Specifically, the plaintiff contends that, even if

the information contained in these six documents was properly classified, "there is an issue in

this case about whether information in the documents being withheld is already in the public

domain."  *Id.* at 16–17.  In this regard, the plaintiff "believes that, having publicized the

Totalization Agreement and the Diplomatic Note, the government has put the information and

the issue in the public domain, and that the government should keep the American people

informed about the matter."  *Id.* at 17; *see also* Olson Decl. ¶ 8 ("If the [Totalization]

Agreements, the Diplomatic Note, and [an explanatory] Telegram [regarding the Diplomatic

Note] were deemed disclosable, the defendant has not demonstrated why other documents

shedding light on the meaning of disclosed documents now should be withheld.").  Furthermore,

---

[6] The plaintiff also argues that there are "issues as to whether all reasonably segregable portions of withheld documents have been disclosed."  Pl.'s Opp'n at 16.  The Court, however, addresses all segregability issues in a separate portion of this opinion.  *See infra* Part III.C.

the plaintiff argues that since one document withheld under FOIA Exemption 1 (document O-36) was originally unclassified, but is now classified, "the defendant should be required to justify that change in viewpoint leading to the reclassification."  Pl.'s Opp'n at 20.

> **1.**     ***The State Department Has Not Adequately Explained the Classification Procedure for Certain Withheld Records.***

First, the plaintiff does not seriously contest the fact that the information withheld in these twelve documents was properly classified pursuant to Executive Order 13,526 § 1.1(a). The only indication of objection from the plaintiff in this regard is the passing comment in its brief that "it is unclear, for example, who actually classified many of the disputed documents, and when."  Pl.'s Opp'n at 16.[7]  Furthermore, the plaintiff does not identify the defendant's satisfaction of the criteria in Executive Order 13,526 § 1.1(a) as a material fact as to which a genuine issue exists.  *See* Pl.'s Statement of Material Facts as to Which a Genuine Issue Exists ("Pl.'s Facts"), ECF No. 32-7.[8]  Thus, the plaintiff has conceded this fact by failing to contest it in its briefing and by failing to raise it as an issue of material fact to which there is a genuine dispute.  *See* LCvR 7(h) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (quoting *United*

---

[7] Executive Order 13,526 requires that "an original classification authority" classify any information, but it does not require that agencies disclose when information became classified.  *See* Exec. Order 13,526 § 1.1(a).

[8] The defendant says in its statement of undisputed facts that "[t]he documents responsive to the FOIA request that were withheld in whole or in part from production to plaintiff under FOIA Exemption (b)(1) . . . were properly withheld."  Def.'s Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s Facts") ¶ 2, ECF No. 30.

*States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))); *Hopkins v. Women's Div.*, *Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997))).

By contrast, the plaintiff more clearly raises the argument that document O-36 may not have been properly classified because it "was originally UNCLASSIFIED," but "is currently classified CONFIDENTIAL." First IPS Decl. ¶ 141. The plaintiff raises the specter that "[p]erhaps [document O-36] was classified 'CONFIDENTIAL' for purposes of this FOIA action," and likewise argues that this document "as well as any other of the disputed documents that were originally unclassified—[may have been] reclassified as 'confidential' for purposes of keeping [it] out of the hands of [the plaintiff]." Pl.'s Opp'n at 20. This argument by the plaintiff, in the Court's view, raises a question as to whether the defendant complied with the requirements of Executive Order 13,526 § 1.7(d) in classifying certain originally unclassified documents (or portions thereof). That section of the Executive Order provides that previously unclassified information "may be classified or reclassified after an agency has received a request for it under the [FOIA]," but "only if such classification meets the requirements of this order and is accomplished on a document-by-document basis with the personal participation or under the direction of the agency head, the deputy agency head, or the senior agency official designated under section 5.4 of this order." Exec. Order 13,526 § 1.7(d).

The defendant fails to address this issue in any way, though it had the opportunity to do so in its reply brief or in a supplementary declaration after the plaintiff raised the issue in its opposition brief. As a result of the defendant's failure to address the fact that certain withheld

and disputed documents were originally unclassified but were later classified at an unspecified time, the defendant's compliance with Executive Order 13,526 § 1.7(d) remains a genuine issue of material fact.  Hence, summary judgment is inappropriate as to the Exemption 1 withholding of the nine disputed documents (or portions thereof) that were originally unclassified but were later classified.  These documents include documents O-36 and LV-7A as well as the classified portions of documents H-7, H-9, H-10, H-11, H-13, H-14, and W-49.  Six of these nine documents (or the classified portions thereof) were clearly classified after the plaintiff submitted its FOIA request, since the documents are dated in 2011.[9]  *See* First IPS Decl. ¶¶ 83, 87, 89, 91, 93, 95 (listing the dates of documents H-7, H-9, H-10, H-11, H-13, and H-14).  The other three documents, created prior to the plaintiff's FOIA request, may have been classified prior to the FOIA request, but the time of their classification is not specified in the defendant's declarations. As a result, should the State Department continue to withhold these documents (or portions thereof) under Exemption 1, the agency will be required to submit a supplementary declaration that clarifies (1) whether any of these documents (or portions thereof) were classified after the plaintiff submitted its FOIA request on July 7, 2008; and (2) if so, whether the defendant complied with Executive Order 13,526 § 1.7(d) in classifying the documents (or portions thereof).

### 2. *The Plaintiff Has Not Pointed to Specific Information in the Public Domain That Duplicates the Information Being Withheld.*

This leaves the plaintiff's broader contention that, since the defendant has released the text of the Totalization Agreement itself, as well as a Diplomatic Note that provides the United

---

[9] Inexplicably, neither party explains why documents created in 2011 would be responsive to the plaintiff's FOIA request.  The plaintiff's FOIA request only sought documents "created between January 1, 2001 and the date of this request," *i.e.*, July 7, 2008.  *See* Compl. Ex. A at 2.  Yet, the defendant clearly withheld certain documents created after July 7, 2008, not on the basis that they were non-responsive, but on the basis that they were exempt from disclosure under the FOIA.  By failing to contest the responsiveness of these documents, the defendant has arguably waived its opportunity to withhold records created after July 7, 2008 on the grounds that they were non-responsive.

States' interpretation of the Agreement, "the government has put the information and the issue in

the public domain, and . . . the government should keep the American people informed about the

matter." Pl.'s Opp'n at 17. This argument by the plaintiff reflects a fundamental misperception

of the operation of the FOIA. Although it is true that the D.C. Circuit has held that "materials

normally immunized from disclosure under FOIA lose their protective cloak once disclosed and

preserved in a permanent public record," *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999),

the D.C. Circuit has likewise held that, in order to qualify for the "public domain" exception to

FOIA, a plaintiff must "point[] to '*specific* information in the public domain that appears to

*duplicate* that being withheld,'" *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 933 (D.C. Cir.

2012) (emphasis added); *accord Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir 1990); *Afshar v.

Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

    The plaintiff in this case has failed to satisfy this burden. In fact, the plaintiff does not

even attempt to satisfy this burden. Rather, the plaintiff repeatedly urges the novel proposition

that, once a government agency publicly releases *any* information about a particular issue, that

agency has waived its ability to later withhold any other information related to the same issue.

*See, e.g.*, Pl.'s Opp'n at 10 ("After disclosing the central documents, the defendant should not be

heard to complain about the disclosure of ancillary documents dealing with the meaning of those

publicly-disclosed items."); *id.* at 18–19 ("To the extent the government did not wish the

existence of [ongoing disagreement with the Mexican government about the Totalization

Agreement] to be made known, any such argument is made too late in light of the fact that the

Diplomatic Note was made public in 2006."); *id.* at 19–20 ("Having released the Diplomatic

Note . . . the State Department cannot reasonably take the position that its subsequent

pronouncement on that meaning is classified and exempt from disclosure under FOIA."). The

D.C. Circuit has specifically rejected the argument made by the plaintiff, holding that "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure.  This insistence on exactitude recognizes the Government's vital interest in information relating to national security and foreign affairs."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citation and internal quotation marks omitted).  Therefore, the plaintiff's argument for disclosure in this regard is wholly unavailing.[10]

### B.   Documents Withheld Under FOIA Exemption 5

In addition to FOIA Exemption 1, the defendant also withheld thirteen disputed documents, in whole or in part, under the deliberative process privilege of FOIA Exemption 5.  That exemption permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  To be properly withheld under Exemption 5, "a document must . . . satisfy two conditions:  its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

In the instant action, the defendant withheld records, in whole or in part, under both the deliberate process privilege and the attorney-client privilege, *see* Def.'s Mem. at 18, but the plaintiff only challenges the defendant's invocation of the deliberative process privilege, *see* Pl.'s

---

[10] The plaintiff's remaining arguments regarding the defendant's invocation of FOIA Exemption 1 are either vague and unsupported or deal with segregability issues, which the Court discusses separately below.  *See, e.g.*, Pl.'s Opp'n at 22 (arguing that "defendant's assertions [are] difficult to comprehend"); *id.* at 24 (contending that "defendant's exemption claim under (b)(1) appears to be too broadly applied").  These arguments are moot in any event because the Court denies summary judgment to the defendant regarding the Exemption 1 claims on each of the documents addressed by these arguments.  *See supra* Part III.A.1.

Opp'n at 24–36.  "The deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated.'"  *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Klamath Water*, 532 U.S. at 8).  "To qualify for Exemption 5 protection under the deliberative process privilege, 'an agency's materials must be both predecisional and a part of the deliberative process.'"  *Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 680 n.4 (D.C. Cir. 2008) (quoting *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989)).  The Supreme Court has acknowledged that "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and "its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government."  *Klamath Water*, 532 U.S. at 8–9 (citations omitted); *see also Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) ("[T]he deliberative process privilege . . . reflect[s] the legislative judgment that 'the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl because the full and frank exchange of ideas on legal or policy matters would be impossible.'" (internal quotation marks omitted) (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977))).

        In contesting the defendant's withholding of certain records, in whole or in part, under the deliberative process privilege, the plaintiff makes several arguments.  First, it argues that many of the withheld records are not "deliberative" because they are either "explanatory" or "factual" in nature.  *See* Pl.'s Opp'n at 26, 29.  Second, it argues that certain records are not "predecisional" because "there is no description of any decision they supposedly precede."  *Id.* at

26; *see also id.* at 27 ("Where defendant claims a document is deliberative and predecisional, but does not identify the finalized decision or demonstrate that one was not made, [the plaintiff] submits that the claim is unsupported and the document must be disclosed.").  Finally, the plaintiff argues that certain predecisional recommendations are not exempt from disclosure because "in making a final decision, [the agency chose] expressly to adopt them or incorporate them by reference."  *Id.* at 27.

The defendant responds that many of the plaintiff's objections to the defendant's Exemption 5 withholdings "overlook certain important points."  *See* Reply Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply") at 12, ECF No. 38.  Namely, the defendant argues that the plaintiff's arguments overlook the facts that (1) "no decision has been made to submit the Totalization Agreement to Congress for its approval," and (2) "there are open issues arising from the Diplomatic Note that accompanied the transmission of the Totalization Agreement to Mexico."  *Id.*  Thus, according to the defendant, many of the documents withheld under the deliberative process privilege reflect ongoing negotiations with Mexico and other countries regarding totalization agreements or ongoing internal deliberations regarding how to proceed with the Totalization Agreement that has already been signed with Mexico.  *See id.* at 4–8, 12.

In total, the plaintiff challenges thirteen records that were withhold, in whole or in part, pursuant to Exemption 5.  *See* Pl.'s Opp'n at 29–36.  Seven of these records were withheld, in whole or in part, solely under Exemption 5, and the other six records were withheld under both Exemption 5 and Exemption 1.  *See id.*[11]  Based on the sworn declarations submitted by the defendant, the Court is unable to conclude that the withholding of any of these thirteen documents was proper under Exemption 5 because the descriptions put forth by the defendant are

---

[11] Since the Court has been unable to conclude that Exemption 1 was properly applied to the six records withheld under both Exemption 1 and Exemption 5, *see supra* Part III.A.1, the Court must evaluate whether Exemption 5 is a proper basis on which to withhold these six records.

either conclusory or lack sufficient factual context.  In this regard, it is important to understand that "[t]he need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'"  *Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)).  "The agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'"  *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 868).  "In addition to explaining the 'function and significance of the document[s] in the agency's decisionmaking process,'" the agency "must describe 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s], and the positions in the chain of command of the parties to the documents.'"  *Elec. Frontier Found. v. U.S. Dep't of Justice* ("*EFF*"), 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (quoting *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)).  In lieu of identifying the deficiencies with respect to each and every document, the Court will identify three overarching shortcomings in the defendant's sworn declarations and will provide illustrative examples of each deficiency.

First, the declarations submitted by the State Department and the SSA do not adequately establish the nature of the decisionmaking process involved in a number of the withheld documents.  A notable example of this deficiency is the State Department's description of the contents of document H-16A, which "is a draft issue paper, drafted by the Bureau of Western Hemisphere Affairs of the Department of State."  First IPS Decl. ¶ 97.  The State Department's declaration states that this draft issue paper:

reports on the status of the agreement with another country and refers to earlier negotiations with Mexico.  It provides data on the country's economy, as well as other estimates relevant to the status of the negotiations and the agreement writ large.  It reports on totalization agreements recently signed with four other countries.

*Id.* ¶ 98.  From this description, it is unclear to which deliberative process this document may have contributed or pertained.  It references "the status of the agreement with another country" and "the status of negotiations," but it "fails to identify a specific deliberative process to which the withheld [draft issue paper] contributed."  *See EFF*, 826 F. Supp. 2d at 168.

Another example of this same deficiency is the SSA's description of the deliberative process associated with documents 18C, 18D, and 18E.  Documents 18C and 18D are "annotated versions of [the] principal [totalization] agreement," and document 18E is the "Main Provisions of the U.S. Mexican Social Security Agreement."  Decl. of Mary Ann Zimmerman ("SSA Decl.") ¶ 9, ECF No. 26-2.  The SSA's sworn declaration states vaguely that "[t]hese documents played a role in the overall process of negotiating and signing the [totalization] agreement."  *Id.* Such a broad and opaque description of the deliberative process involved does not provide the Court with enough detail about whether these documents are deliberative and predecisional.  As to whether these documents are predecisional, the SSA's declaration is ambiguous regarding which "decision" the three documents preceded.  On the one hand, the declaration states that the documents "played a role in the overall process of negotiating and signing the agreement," which implies that these documents pertained to some decision or series of decisions before the Totalization Agreement was signed.  *Id.* ¶ 9.  On the other hand, the declaration states that these documents are "prepared for Congress" and are only "released to the public after Congress approves the agreement," which implies that the relevant decision was whether to submit the

Totalization Agreement to Congress *after* it was signed. [12]  *Id.*  As to whether the documents are

deliberative, the declaration reveals nothing about the contents of document 18E, other than that

it consists of "the Main Provisions of the U.S. Mexican Social Security Agreement," and the

declaration states that documents 18C and 18D "contain SSA employees' analyses of individual

clauses of the agreement," but does not specify what sort of "analyses" are contained in the

documents.  *See id.*  Without a more detailed description of the contents of these documents, the

Court is unable to discern whether these documents "reflect the give and take of the deliberative

process" or whether they are merely explanations or summaries of existing policy.  *See Public*

*Citizen*, 598 F.3d at 876.

Second, the declarations submitted by the defendant fail to describe with any amount of

detail the "'function and significance of the document[s] in the agency's decisionmaking

process.'"  *Arthur Andersen*, 679 F.2d at 258 (quoting *Taxation with Representation Fund v. IRS*,

646 F.2d 666, 678 (D.C. Cir. 1981)).  This sort of factual context is critical in determining

whether the deliberative process privilege applies, *see, e.g.*, *Coastal States*, 617 F.2d at 868, but

it is wholly absent from the defendant's declarations in the instant case.  This goes largely to the

question of whether documents were "predecisional" because "if documents are not a part of a

clear 'process' leading to a final decision on the issue, . . . they are less likely to be properly

characterized as predecisional."  *Id.*  One notable example of this recurring deficiency is the

State Department's discussion of document H-13, which is described as "an email between

officials of the Bureau of Western Hemisphere."  First IPS Decl. ¶ 93.  The declaration states that

---

[12] In this regard, the plaintiff is right to argue that the agency's justifications are deficient insofar as they contain "no description of any decision they supposedly precede."  Pl.'s Opp'n at 26.  The D.C. Circuit has stated that an agency's submissions justifying a deliberative process privilege exemption must identify "the specific final decisions to which the advice or recommendations contained in the withheld documents contributed; absent that, we are not positioned to pass upon the applicability *vel non* of [the deliberative process] privilege."  *Senate of P.R.*, 823 F.2d at 585.

this document "discusses requirements for dialogue with Mexican officials and tactics for minimizing difficulties in going in separate directions with totalization negotiations with two different countries," and it also states, in conclusory fashion, that such "draft talking points are also pre-decisional and deliberative in character." *Id.* ¶ 94.  Assuming that this document was used in the process of negotiating the Totalization Agreement—which itself is unclear—it is utterly uncertain what *role* this document may have played in such negotiations.  It is also unclear what final "decision" this document contributed to making:  Was it the decision of what negotiating strategy to take?  The decision of whether to grant a particular concession during the negotiations?   The Court and the plaintiff are left to guess at the answer.  The defendant's sworn declarations are riddled with examples of similarly cursory explanations.

Finally, the declarations submitted by the defendant do not describe in any fashion "'the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s]'" or "the relative positions in the agency's 'chain of command' occupied by the document's author and recipient."  *Senate of P.R.*, 823 F.2d at 586 (citation omitted) (quoting *Taxation with Representation*, 646 F.2d at 678).  The D.C. Circuit has acknowledged that "[t]he identity of the parties to the memorandum is important" because "a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made."  *Coastal States*, 617 F.2d at 868.  The defendant only identifies the author and recipient of *one* of the thirteen contested documents withheld under Exemption 5.  *See* First IPS Decl. ¶ 139 (stating that document O-38 "is a memorandum from the Assistant Secretary for Consular Affairs to the Undersecretary of Management").  Other than this one document, the most the defendant's sworn declarations offer in this regard is the nebulous statement that

documents were sent by "officials" of a given component to other "officials," either in the same component or a different component.  *See id.* ¶¶ 83, 87, 89, 91, 93, 95, 97, 99,143.  Such vague statements offer very little information to the Court in determining whether such documents are protected by the deliberative process privilege.

Based on these three overarching deficiencies in the declarations submitted by the defendant, the Court concludes "'not that the documents are not exempt as a matter of law, but that the agency has failed to supply' in its *Vaughn* submissions 'the minimal information necessary to make a determination' concerning applicability of the deliberative process privilege."  *EFF*, 826 F. Supp. 2d at 173 (quoting *Coastal States*, 617 F.2d at 861).  Therefore, the Court will deny summary judgment to the defendant regarding its Exemption 5 withholding determinations.  Accordingly, the defendant may either supplement its declarations demonstrating the applicability of Exemption 5 or disclose the thirteen records withheld under that exemption.

### C.    <u>Segregability</u>

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  The D.C. Circuit has acknowledged that establishing the non-segregability of non-exempt material "presents problems for the agency since . . . segregability depends entirely on what information is in a document and how it is presented."  *Mead Data*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Therefore, although "agencies should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information," agencies "must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."  *Id.*  To this end, the Circuit

has said that "[i]n addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id.* Under *Mead Data*, if a small proportion of the information is non-exempt, the agency's explanatory burden is less, and if a larger proportion of the information is non-exempt, "the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information." *Id.*

On the other hand, however, the Circuit has more recently held that "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Indeed, certain, more recent decisions from the D.C. Circuit have indicated that the standard first articulated in *Mead Data* has been relaxed. Those decisions have held that an agency may satisfy its segregability obligations by (1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material. *See, e.g.*, *Loving*, 550 F.3d at 41 (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination"); *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (upholding agency's segregation efforts based on "comprehensive *Vaughn* index" and "the affidavits of [agency officials]").

The plaintiff states generally that "[i]n the case of all of the documents withheld in full, [the plaintiff] takes issue with defendant's conclusory assertion that no reasonably segregable

portions of the documents can be disclosed." Pl.'s Opp'n at 10.  In light of the deficiencies in the

defendant's *Vaughn* index discussed above, the Court concludes that the defendant's

segregability efforts do not meet even the more lenient standard articulated in *Loving* and

*Johnson*.  Those cases require, at a minimum, that an agency submit a "comprehensive *Vaughn*

index," *Johnson*, 310 F.3d at 776, which sufficiently describes each document withheld and the

reasons for the withholding, *see Loving*, 550 F.3d at 41.  Although the Court does not doubt the

agency's statement that "[a]ll of the documents . . . have been carefully reviewed for reasonable

segregation of non-exempt information," First IPS Decl. ¶ 182, absent a sufficient *Vaughn* index,

an agency must provide other facts, beyond its good-faith assurances, that would establish that it

released all reasonably segregable, non-exempt information.  Such information could include, for

example, a description of "what proportion of the information in a document is non-exempt and

how that material is dispersed throughout the document." *Mead Data*, 566 F.2d at 261.

### D. *In Camera* Inspection of Disputed Documents

Having concluded that there are various factual deficiencies in the defendant's sworn

declarations, the Court "has several options, including inspecting the documents *in camera*,

requesting further affidavits, or allowing the plaintiff discovery." *Spirko v. U.S. Postal Serv.*,

147 F.3d 992, 997 (D.C. Cir. 1998).  Since "a district court should not undertake *in camera*

review of withheld documents as a substitute for requiring an agency's explanation of its claimed

exemptions in accordance with *Vaughn*," *id.*, the Court concludes, in its discretion, that *in

camera* inspection of the disputed documents is unnecessary at this time and would not serve the

interests of judicial economy. *See, e.g.*, *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)

(observing that "[i]n camera inspection requires effort and resources and therefore a court should

not resort to it routinely on the theory that 'it can't hurt'").  Furthermore, requiring the agency to

describe the withheld records in a publicly available declaration, rather than merely submitting

the records for *in camera* review, foments the transparency and "adequate adversary testing" that

are crucial to ensuring that "a party's right to information is not submerged beneath

governmental obfuscation and mischaracterization."  *See Vaughn v. Rosen*, 484 F.2d 820, 826–

28 (D.C. Cir. 1973); *see also PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 253 (D.C. Cir. 1993)

("*[I]n camera* review is generally disfavored.  It is 'not a substitute for the government's

obligation to justify its withholding in publicly available and debatable documents.'" (quoting

*Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992))).

      The Court believes that any factual deficiencies in the defendant's sworn declarations are

capable of being cured by the submission of additional sworn declarations that may clear up any

of the remaining issues of material fact discussed above.  Therefore, should the defendant

continue to withhold the sixteen disputed records as to which summary judgment is denied, the

Court will "allow[] the [State] Department a 'last chance' to supplement its declarations and

*Vaughn* indices" before requiring *in camera* inspection.  *See Int'l Counsel Bureau v. U.S. Dep't

of Def.*, 864 F. Supp. 2d 101, 105 (D.D.C. 2012).  Therefore, the plaintiff's motion for *in camera*

review is denied without prejudice.

## IV.    CONCLUSION

      For the reasons discussed above, the Court concludes that the defendant has adequately

justified its withholding of only three of the nineteen contested documents:  documents W-9,

18A, and 18B. As to those three documents, the Court grants the defendant's motion for

summary judgment.  The Court also concludes that it does not have an adequate factual basis to

conclude that the other sixteen contested documents were properly withheld, in whole or in part,

under either Exemption 1 or Exemption 5.  Therefore, the Court will deny summary judgment to

the defendant with regard to those sixteen documents.  Should the defendant continue to withhold these sixteen documents, the defendant will be required to submit supplementary declarations that address the deficiencies discussed above.  Accordingly, if the defendant elects to continue to withhold these sixteen documents, it shall file jointly with the plaintiff, within twenty days, a proposed scheduling order to govern the timing of further proceedings in this action, including the filing of any further dispositive motions.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 7, 2013

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge