# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TREA SENIOR CITIZENS LEAGUE,

        Plaintiff,

v.

UNITED STATES DEPARTMENT OF
STATE,

        Defendant.

Civil Action No. 10-1423 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

This Freedom of Information Act ("FOIA") case, 5 U.S.C. § 552, involves a request for

documents related to a totalization agreement[1] signed by representatives of the United States and

Mexican governments in June 2004. *See* Pl.'s Mem. Supp. Mot. Partial Summ. J. and Opp'n to

Def.'s 2d Renewed Mot. Summ. J. ("Pl.'s 2d Mem.") at 4 n.1, ECF No. 48-1. Pending before the

Court are three motions: the defendant's Second Renewed Motion for Summary Judgment, ECF

No. 45; the plaintiff's Cross Motion for Partial Summary Judgment, ECF No. 48; and the

plaintiff's Second Motion for *In Camera* Review, ECF No. 49. For the reasons described below,

---

[1] The Social Security Act authorizes totalization agreements between the "United States and foreign countries for the purposes of entitlement to and the amount of old-age, survivors, disability, or derivative benefits based on a combination of an individual's periods of coverage under the social security system established by the Social Security Act and the social security systems of foreign countries." Declaration of Dawn S. Wiggins, Dep. Exec. Dir., Office of Privacy and Disclosure, Social Security Administration ("Wiggins Decl.") ¶ 4, ECF No. 45-2. The plaintiff explains that these international Social Security agreements are "supposed to coordinate the U.S. Social Security program with a comparable program of the other country, with the goals of: (i) eliminating dual social security taxation that occurs when a worker from one country works in another country and is required to pay social security taxes in both countries on the same earnings; and (ii) helping to fill gaps in benefit protection for workers who have divided their careers between the U.S. and another country, but who have not worked long enough in one or both countries to qualify for social security benefits. Under such agreements, workers are allowed to combine work credits from both countries to become eligible for benefits, with the benefit amount being proportional to the amount of credits earned in the paying country." *See* Pl.'s Mem. Supp. Pl.'s 2d Mot. for *In Camera* Review ("Pl.'s 2d *In Camera* Mem.") at 1 n.1, ECF No. 49-1.

each motion for summary judgment is granted in part and denied in part and the motion for in camera review is denied without prejudice.

## I.    BACKGROUND

The factual and procedural background of this matter is discussed in greater detail in this Court's previous memorandum opinion and therefore only summarized here.  *See Trea Senior Citizens League v. U.S. Dep't of State* ("*Trea I*"), 923 F. Supp. 2d 55, 58–60 (D.D.C. 2013).

### A.    The Plaintiff's FOIA Request and *Trea I*

In July, 2008, the plaintiff, Trea Senior Citizens League, filed a FOIA request with the defendant, the United States Department of State, seeking records "concerning or relating to the agreement between the United States and Mexico which would provide, in some manner, for the payment of U.S. Social Security benefits to Mexican nationals."  *See* Compl. Ex. A at 1–2, ECF No. 1-1.  The defendant eventually located "124 unique responsive documents" to the plaintiff's request.  Def.'s 1st Mot. Summ. J. Ex. A, Declaration of Sheryl L. Walter, Director, Office of Information Programs and Services, United States Department of State ("1st Walter Decl.") ¶ 181, ECF No. 30-1.  Of those records, "44 were released in full, 43 were withheld in part, and 21 documents were withheld in full.  The remaining 16 documents were referred to other government agencies for their review and direct reply to the plaintiff."  *Id.*[2]

In its opposition to the defendant's initial motion for summary judgment, the plaintiff challenged the withholding, in whole or in part, of nineteen documents.  Pl.'s Mem. Opp'n Def.'s 1st Mot. Summ. J. at 6 ("Pl.'s 1st Mem."), ECF No. 32.  This Court granted summary judgment to the defendant as to three of documents for which "the defendant ha[d] adequately justified its withholding" and denied summary judgment as to the remaining sixteen documents.

---

[2] The plaintiff has summarized the dates on which the defendant produced responsive document as follows: December 15, 2010; February 4, 2011; April 11, 2011; July 11, 2011; July 17, 2011; August 26, 2011; September 28, 2011; March 15, 2012; and June 29, 2012.  Pl.'s 2d *In Camera* Mem. at 2 n.2.

*Trea I*, 923 F. Supp. 2d at 71.  The Court granted the defendant an opportunity to "submit supplementary declarations that address the deficiencies discussed" in *Trea I*, *id.*, which the defendant did by filing Supplemental Declarations from the State Department and the Social Security Administration with its renewed motion for summary judgment, *see* Def.'s 2d Renewed Mot. Summ. J. and Supp. Mem. ("Def's 2d Mem.") Ex. A, Second Supplemental Declaration of Sheryl L. Walter ("2d Walter Decl.") ¶ 3, ECF No. 45-1; Def.'s 2d Renewed Mot. Summ. J. Ex. B, Declaration of Dawn S. Wiggins, Dep. Exec. Director, Office of Privacy and Disclosure, Social Security Administration ("Wiggins Decl.") ¶ 2, ECF No. 45-2.

> **B.      The Instant Motions and Disputed Documents**

In its Partial Cross Motion for Summary Judgment, the plaintiff now challenges only six withheld responsive records, three from the Department of State and three from the Social Security Administration.  *See* Pl.'s 2d Mem. at 8.  All six records were withheld under the deliberative process privilege of Exemption 5 to the FOIA, 5 U.S.C. § 552(b)(5).  All but one of the records, State Department Document O-28, were withheld in their entirety.  Since the plaintiff does not challenge the withholding of the other ten documents which were disputed in the initial round of summary judgment motions, the defendant's Second Renewed Motion for Summary Judgment as to these ten documents is granted.[3]  The only issue before the Court is the propriety of the withholding of the six challenged documents under Exemption 5.  Each record is described below.

> **1.      *State Department Document H-16A***

This undated, "sensitive but unclassified" document "is a status report on the negotiations for a bilateral totalization agreement with another country (not Mexico) and refers to the earlier

---

[3] The ten records that have been withheld in whole or in part and for which the plaintiff no long seeks release are identified as: W-9; W49; H-7; H-9; H-10; H-11; H-13; H-14; O-36; O-37; LV-7A; 18A; and 18B.  *See* Pl.'s 2d Mem. Ex. A at 2, ECF No. 48-2.

negotiations with Mexico." 2d Walter Decl. ¶ 29. Based upon this description, the Court

presumes that despite the fact that the document is undated, the contents indicate that it was

created sometime after the conclusion of the negotiations with Mexico regarding the United

States-Mexico Totalization Agreement ("the Agreement"). The document "was prepared by two

[Western Hemisphere Affairs ("WHA")] desk officers for a senior Department official." *Id.* It

compares the negotiations with one country to the negotiations "undertaken with Mexico for a

similar agreement." *Id.* ¶ 30.

The defendant's declarant asserts the document was properly withheld under Exemption

5 because the document "is pre-decisional and deliberative as it contains comments, opinions,

and predictions related to the two pending agreements and offers an analysis of the two

negotiations processes." *Id.* The defendant's declarant notes that "[n]either agreement discussed

in this document has been finalized," and that the "purpose of the document appears to be to

brief a senior Department official on the status of the negotiations, and to make

recommendations as to how to proceed." *Id*.

As discussed in more detail in Part III.A.2, *infra*, underlying the defendant's

characterization of this document is its view that although the Agreement has been signed and

may be submitted to Congress at any time for its review, the Agreement is still not "final"

because it is not in effect. *See* Def.'s Opp'n to Pl.'s Partial Mot. Summ. J. & Reply to Pl.'s

Opp'n to Def.'s Mot. Summ. J. ("Def.'s Reply") at 8–9, ECF No. 53 ("The Totalization

Agreement with Mexico has been signed, but it has not been ratified . . . . [I]t remains a matter of

interest in the relationship of the United States and Mexico and in connection with the

negotiation of totalization agreements with other nations.").

The defendant's declarant asserts that withholding under Exemption 5 is proper because the document's "release would chill the open and candid deliberations that involve evolving matters of national and international significance, including the pursuit of totalization agreements with certain countries." 2d Walter Decl. ¶ 30. The defendant's declarant claims that "in the course of [the defendant's] line-by-line review of this document, [the defendant] identified no meaningful non-exempt information that can be reasonably segregated and released." *Id.* ¶ 31.

### 2. *State Department Document H-16B*

This document is "unclassified" and dated February 15, 2011. *Id.* ¶ 32. It is a "draft" of "talking points concerning the pending totalization agreement with Mexico that a WHA official prepared for a more senior official." *Id.* ¶¶ 32–33. The defendant's declarant asserts that the document "contains pre-decisional and deliberative recommendations that are part of the internal deliberations concerning developing a strategy for negotiating with two countries." *Id.* ¶ 32. According to the defendant's declarant, "the talking points were never used" and pertain to Mexico and one other country for which "totalization agreement[s] [are] under discussion . . . and the issues associated with both agreements remain current and pre-decisional." *Id.* ¶ 33.

The defendant's declarant invokes Exemption 5 to withhold this document because "its release would reveal the opinions and recommendations shared during the internal deliberative process." *Id.* The defendant's declarant claims that "in the course of [the defendant's] line-by-line review of this document, [the defendant] identified no meaningful non-exempt information that can be reasonably segregated and released." *Id.* ¶ 34.

### 3. *State Department Document O-28*

This unclassified document is "dated June 28, 2004" and is the only document in dispute to be withheld in part under Exemption 5. *Id.* ¶ 35. Document O-28 is the document by which

the Assistant Secretary of State, Bureau of Consular Affairs, requested permission from the Under Secretary of State for Management for authorization to sign the Agreement.  *See id.* ¶ 36. According to the defendant's declarant, withholding under Exemption 5 is appropriate because the document's "release would reveal opinions, analyses and recommendations regarding a strategy for the negotiations, which would chill the open and candid exchange of ideas during the internal deliberative process."  *Id.*

The defendant "released approximately one-quarter of the material" contained in this document.  *Id.* ¶ 37.  One section, "under the subtitle 'Essential Factors' has been excised in its entirety [because] [w]ithin the excised portion, there are several non-exempt phrases and sentences . . . that in isolation have little, if any, informational value."  *Id.* ¶ 37.

### 4. *Social Security Administration Documents 18C, 18D and 18E*

The Social Security Administration ("SSA") documents share many of the same characteristics and can be addressed together.  Each document is being withheld in full under Exemption 5.  Wiggins Decl. ¶ 7.  Documents 18C and 18D are the United States-Mexico "Principal Agreement and Administrative Arrangement with Annotations and Comments."  *Id.* According to the SSA's declarant, the left side of these two documents contains the Agreement (18C) or the Administrative Arrangement (18D) between the United States and Mexico in English, while the right side of the documents contains "annotations and comments."  *Id.*  The signed agreement is publicly available.  *Id.* ¶ 5.  Document 18E is a "Summary of Main Provisions . . . of the agreement in anticipation of the President transmitting the Agreement to Congress.  The Summary includes an overview of specific provisions of the Agreement and gives examples of how it will impact on individuals in the countries subject to the agreement." *Id.* ¶ 8.

The SSA's declarant notes that the annotations and comments in 18C and 18D were "prepared by a member of the negotiating staff in the Office of International Programs." *Id.* ¶ 7. The three documents are of a type prepared "[e]ach time the agency negotiates and signs a totalization agreement" and are part of "a package of documents to be transmitted to the State Department." *Id.* "SSA prepares these documents in anticipation of the President's transmittal of the Agreement to Congress." *Id.*

According to the SSA's declarant, withholding of these documents under Exemption 5 is appropriate because "release of these documents to the public would cause confusion given that the totalization agreement may never become effective. Moreover, the Executive Branch should be given the opportunity to fully review and vet these documents internally before they are made public." *Id.* ¶ 9. The SSA's declarant avers that "[a]lthough the documents contain the public provisions of the agreement and set forth the laws of the U.S. or the other country . . . the facts [are] inextricably intertwined with the other portions of the document, because they were chosen by an SSA employee to explain what they perceived to be the important provisions of the agreement or provisions that they concluded required further explanation and additional background." *Id.* ¶ 10. Consequently, according to the SSA's declarant, "[d]isclosure of this information would chill candor among agency employees and inter-agency communications" and release of the information "would reveal the value placed on certain facts and/or provisions of the agreement by the agency prior to the annotations, comments, and summary being fully vetted within the Executive Branch." *Id.*

## II.    LEGAL STANDARD

Congress enacted the FOIA as a means "to open agency action to the light of public scrutiny." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011)

(quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). As the Supreme Court has "consistently recognized [] the basic objective of the Act is disclosure." *Chrysler Corp. v. Brown*, 441 U.S. 281, 290 (1979). At the same time, the statute represents a "balance [of] the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) ("*United Technologies*") (internal quotation marks and citations omitted). Reflecting that balance, the FOIA contains nine exemptions set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed." *Milner v. U.S. Dep't of Navy*, 131 S. Ct. 1259, 1262 (2011) (internal quotations and citations omitted) (citing *FBI v. Abramson*, 456 U.S. 615, 630 (1982)); *see also Pub. Citizen, Inc. v. Ofc. of Mgmt. and Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361.

The agency invoking an exemption to the FOIA has the burden "to establish that the requested information is exempt." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 351-352 (1979); *see also Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (holding that the agency "bears the burden of establishing the applicability of the claimed exemption"). In order to carry this burden, an agency must submit sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld, to enable the court to fulfill its duty of ruling on the applicability of the exemption, and to enable the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court. *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176

(D.C. Cir. 1996) ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection . . . [which] serves the purpose of providing the requestor with a realistic opportunity to challenge the agency's decision.").

The FOIA provides federal courts with the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). A district court must review the *Vaughn* index and any supporting declarations "to verify the validity of each claimed exemption." *Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Moreover, a district court has an "affirmative duty" to consider whether the agency has produced all segregable, non-exempt information. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue *sua sponte*") (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733-735 (D.C. Cir. 2008) ("'[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld'") (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027-1028 (D.C. Cir. 1999) ("we believe that the District Court had an affirmative duty to consider the segregability issue *sua sponte* . . . even if the issue has not been specifically raised by the FOIA plaintiff"); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact." FED. R. CIV. P. 56. "In FOIA cases, '[s]ummary judgment may be granted on the basis of

agency affidavits if they contain reasonable specificity of detail rather than merely conclusory

statements, and if they are not called into question by contradictory evidence in the record or by

evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, at 215

(D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287

(D.C. Cir. 2006) and *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)). "Ultimately, an

agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or

'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013)

(quoting *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson v. U.S.

Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75

(D.C. Cir. 2007)).

## III.    DISCUSSION

As noted, all of the challenged documents are being withheld, in whole or in part, under

Exemption 5's "deliberative process privilege." *See* Pl.'s 2d Mem. Ex. B, Declaration of

William J. Olson, Counsel to Trea Senior Citizens League ("2d Olson Decl.") ¶¶ 4, 7, ECF No.

48-3. As discussed below, the defendant has premised its invocation of this privilege on an

overbroad view of what constitutes a "pre-decisional" document under the FOIA.

### A.    Exemption 5's Deliberative Process Privilege

FOIA Exemption 5 allows agencies to withhold "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency." 5 U.S.C. § 552(b)(5). To be properly withheld under Exemption 5,

"a document must . . . satisfy two conditions: its source must be a Government agency, and it

must fall within the ambit of a privilege against discovery under judicial standards that would

govern litigation against the agency that holds [it]." *U.S. Dep't of Interior v. Klamath Water*

*Users Protective Ass'n* ("*Klamath Water*"), 532 U.S. 1, 8 (2001). While the first condition is

indisputably met here, the parties vigorously dispute whether the defendant has properly invoked

the deliberative process privilege. Consequently, before evaluating the application of this

privilege to the six remaining documents at issue, the Court first discusses the prerequisites for

invocation of the deliberative process privilege and then examines when documents are "pre-

decisional" for the purposes of the FOIA, since this is the significant dispute between the parties

in this case.

### 1. *The Deliberative Process Privilege*

"To qualify for Exemption 5 protection under the deliberative process privilege, 'an

agency's materials must be both predecisional and a part of the deliberative process.'" *Nat'l*

*Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 680 n.4 (D.C. Cir. 2008) (quoting

*Formaldehyde Inst. v. U.S. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir.

1989)). The Supreme Court has acknowledged that "[t]he deliberative process privilege rests on

the obvious realization that officials will not communicate candidly among themselves if each

remark is a potential item of discovery and front page news" and, thus, "its object is to enhance

'the quality of agency decisions,' by protecting open and frank discussion among those who

make them within the Government." *Klamath Water,* 532 U.S. at 8–9 (citations omitted); *see*

*also Tax Analysts v. IRS,* 117 F.3d 607, 617 (D.C. Cir. 1997) ("[T]he deliberative process

privilege . . . reflect[s] the legislative judgment that 'the quality of administrative decision-

making would be seriously undermined if agencies were forced to operate in a fishbowl because

the full and frank exchange of ideas on legal or policy matters would be impossible.'" (quoting

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 256 (D.C. Cir. 1977)).

Consequently, this privilege protects "'documents reflecting advisory opinions,

recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated.'" *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Klamath Water*, 532 U.S. at 8).

## 2. When A Record Is No Longer "Pre-Decisional"

The defendant's invocation of the deliberative process privilege here is predicated on the proposition that the Agreement is not final because it has "been signed but not submitted to Congress." *See* Def.'s Mem. at 5. "[T]he Agreement remains a matter of continuing concern to the [defendant], and it is a matter as to which deliberations within the [defendant] continue." Def.'s Reply at 9. In effect, the defendant argues that because the Agreement has not gone into effect, the documents at issue are pre-decisional and amount to merely a recommendation or advice to the President, who ultimately determines whether the Agreement is transmitted to Congress. *See id.* at 11. Moreover, until transmittal and action (or, in this case, inaction) by Congress, the Agreement remains ineffective and, therefore, not final for purposes of the FOIA. *See id.*

As the plaintiff points out, once the Agreement is submitted to Congress, there is a short period of sixty days in which either the House or the Senate must make any objection to the Agreement or the Agreement will automatically take effect. *See* Pl.'s 2d Mem. at 31. Now is the critical time when the public needs "the ability to obtain and consider documents revealing the operation and effects of this agreement and have time to petition Congress to take appropriate action," not when the Agreement has already become a *fait accompli*. *See id*. As this Circuit has noted, "the public can only be enlightened by knowing what the national office believes the law to be." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). The Second Circuit has similarly cautioned that the "view that [an agency] may adopt a legal position while shielding

from public view the analysis that yielded that position is offensive to FOIA." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 360 (2d Cir. 2005). In light of the FOIA's goal of maintaining an informed citizenry and "open[ing] agency action to the light of public scrutiny," *Am. Civil Liberties Union*, 655 F.3d at 5 (internal citation omitted), the release of the requested records goes to the very heart of the FOIA's purpose.

Yet, the Supreme Court has acknowledged that "[d]rawing . . . a line between what may be withheld and what must be disclosed is not without difficulties" in the Exemption 5 context. *See EPA v. Mink*, 410 U.S. 73, 86 (1973) *superseded by statute as recognized in CIA v. Sims*, 471 U.S. 159, 189 n.5 (1985) (Marshall, J. concurring). The Supreme Court has provided significant guidance by articulating two general principles that are pertinent here. First, an agency's recommendation does not cause the recommendation to lose its "pre-decisional" status merely because it has been communicated to another agency or Executive Branch component. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975) ("By including inter-agency memoranda in Exemption 5, Congress plainly intended to permit one agency possessing decisional authority without requiring that the advice be any more disclosable than similar advice received from within the agencies."); *Bureau of Nat'l Affairs v. U.S. Dep't of Justice*, 742 F.2d 1484, 1497 (D.C. Cir. 1984) ("[V]iews submitted by one agency to a second agency that has final decisional authority are predecisional materials exempt from disclosure under FOIA."); *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 19 (D.D.C. 2004) (same). This appears to be the principle most closely analogous to the defendant's position here, namely, that the disputed documents related to the Agreement simply relay advice to the President, since the Agreement itself is not yet final.

The Supreme Court has been equally clear, however, that when such advice is incorporated into a final agency decision, records of that advice are no longer exempt under Exemption 5. The Court has explained that the "purposes behind Exemption 5," namely, "protecting the give-and-take of the decisional process," is "not violated by disclosure once an agency chooses expressly to adopt a particular text as its official view." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). Thus, "Exemption 5 . . . does not protect internal advisory communications when incorporated in a final agency decision." *Id.*; *see also NLRB v. Sears, Roebuck & Co.* ("*Sears*"), 421 U.S. 132, 161 (1975) ("[I]f an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in which they would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5."); *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 602 (quoting *Sears*, 421 U.S. at 161). Set against the guideposts of these two principles, the Court is mindful that whether an agency's expressed position is merely a recommendation, which qualifies as pre-decisional, or a final opinion, which falls outside Exemption 5, can be a close question.

The key to determining whether a document is pre-decisional is not necessarily in what stage of implementation, or on whose desk, the policy currently rests—because a final policy may never be acted upon—but instead is more simply focused on whether the document "was generated before the adoption of an agency policy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). In reference to the Agreement, officials from the United States and Mexico signed the Agreement in 2004, *see* Pl.'s 2d Mem. at 4 n.1, and the terms of the Agreement have been disclosed to the public. Wiggins Decl. ¶ 5. Despite the defendant's contention that the Agreement "remains a matter of continuing concern," there can be little doubt

that the Agreement was formally adopted as agency policy when representatives of the United States and Mexico bound their respective nations to the terms of the Agreement, even if further implementation requires additional steps, including transmittal to and final acceptance by the United States Congress. The Department of State is the authority through which the United States negotiates international agreements and the SSA will ultimately be responsible for executing the Agreement. There is perhaps no more final expression of agency policy than signing a major international agreement on behalf of the United States of America. Therefore, the Agreement is an expression of final agency policy for the purposes of the FOIA.[4]

To understand the fatal logical flaw in the defendant's argument, the D.C. Circuit's discussion of a FOIA request for documents from the Office of Management and Budget ("OMB") is illuminating.[5] OMB occupies a "unique role and position in the Executive Branch as advisor to the President," *Public Citizen, Inc. v. Ofc. of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2009) ("*Public Citzen*"), in that it "helps the President prepare the federal budget and ensures that legislation, testimony, reports, and policies prepared by other federal agencies are consistent with Administration policy," *id* at 867. OMB is analogous to the position the defendant asserts it is in: an advisory role to the President and, ultimately, Congress, who must act on information provided by the defendant. *See, e.g.*, Def.'s Reply at 3 ("the issues discussed remain current and could entail further action by the [defendant]"); *id.* at 11 ("Moreover the Executive Branch [the State Department and the President] should be given the opportunity to fully review and vet these documents internally before they are made public. Because the

---

[4] The defendant relies upon a Third Circuit case, *Abdelfattah v. United States Department of Homeland Security*, 488 F.3d 178 (3d Cir. 2007), which found that a "draft incident report" was properly withheld under Exemption 5 as support for its position that the Agreement is not final because it has not gone into effect. *See* Def.'s Reply at 11. *Abdelfattah* is distinguishable because, in that case, "there [was] no indication in the record that the draft report was expressly adopted as, or incorporated by reference into, the [agency's] final decision." *Abdelfattah*, 488 F.3d at 184. In the instant case, the Agreement is the final agency decision and the negotiations and explanations at issue in the disputed documents are either not pre-decisional or are incorporated by reference into the agency's final decision.
[5] Neither party relied upon this case in their briefing.

decision to transmit the agreement to the Congress rests with the President of the United States, we continue to withhold these documents as deliberative.") (quoting Wiggins Decl. ¶ 9).

In *Public Citizen*, the documents at issue were "the current version and various outdated versions of a memo to OMB staff . . . provid[ing] a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative 'bypass' authorities and a discussion of bypass authority and Inspector[s] General[]."[6]  *Public Citizen*, 598 F.3d at 868.  OMB withheld these documents under Exemption 5,[7] *id.*, claiming that, *inter alia*, the documents at issue would "serve as a starting point for discussions within OMB concerning possible changes to OMB's practices" and were therefore pre-decisional.  *Id.* at 875.  The court rejected that argument, noting that when "an agency seeks to change a policy, it logically starts by discussing the existing policy, and such discussions hardly render documents explaining the existing policy pre-decisional.  Otherwise, it would be hard to imagine any government policy document that would be sufficiently final to qualify as non-predecisional and thus subject to disclosure under FOIA."  *Id.* at 875–76.  The court went on to note that "[a] document that does nothing more than explain an existing policy cannot be considered deliberative" under Exemption 5.  *Id.* at 876.

*Public Citizen* is instructive here because it addresses, and rejects, the argument made by the defendant, namely, that the possibility of change in the Agreement and the fact that it has not yet gone into effect should render records discussing the Agreement pre-decisional and deliberative.  While the Agreement may, as the defendant asserts, "be changed by the State Department and/or the President," those changes do not make the records at issue, by their

---

[6] "Bypass authority" is the term given to agencies that may communicate directly with Congress without prior clearance of those communications by OMB.  *See Public Citizen*, 598 F.3d at 867.
[7] OMB also withheld the documents under Exemption 2 to the FOIA, 5 U.S.C. § 552(b)(2), but the court found Exemption 2 did not apply.  *See Public Citizen*, 598 F.3d at 874.

nature, pre-decisional or deliberative. Indeed, to do so would be to fall into the trap the D.C. Circuit warned of, where no "policy document . . . would be sufficiently final to qualify as non-predecisional." *Id.* at 876.

As to the instant case, "it might well be difficult to determine at what point [the defendant's] recommendations about the suitability of a particular piece of proposed litigation have been sufficiently adopted to qualify as 'working law,' [but] we face no such difficulty here." *Id.* at 875. The defendant has adopted the Agreement by signing it on behalf of the United States. Thus, like the policy documents at issue in *Public Citizen*, the Agreement is sufficiently "final" for determining whether documents pertaining to the Agreement are pre-decisional and deliberative. It is with this finding in mind that the Court turns to the evaluation of each document still in dispute.

**B.     State Department Document H-16A Must Be Reexamined**

The plaintiff challenges the continued withholding of State Department Document H-16A based on the presence in the document of certain "historical" information referring to the State Department's negotiations with Mexico concerning the Agreement. *See* Pl.'s 2d Mem. at 22. The plaintiff also challenges the defendant's assertion that the document contains no segregable information. *Id.* The defendant's declarant states that this document was prepared for "a senior Department official on the status of the negotiations, and to make recommendations as to how to proceed." 2d Walter Decl. ¶ 30. It is clear from the declarant's discussion of these documents that one of the "negotiations" the declarant asserted was not "finalized" is the United States-Mexico Agreement. *See id.* ¶¶ 29–30 (stating the document is "a status report on the negotiations for a bilateral totalization agreement with another country (not Mexico), and refers to the earlier negotiations with Mexico . . . [n]either agreement discussed in this document has been finalized."). As discussed in Part III.A.2, *supra*, the United States-Mexico Agreement is

"finalized" for the purposes of Exemption 5 and the discussion of negotiations leading up to the adoption of the Agreement has most likely been incorporated into the statement of final agency policy memorialized in the Agreement. It would appear, therefore, that at least some of the information in Document H-16A is non-exempt under Exemption 5 and should be released.

The plaintiff urges the Court to conduct an *in camera* review of these documents to determine what portions of the document are reasonably segregable. *See* Pl.'s Mem. Supp. Pl.'s 2d Mot. for *In Camera* Review, ECF No. 49-1, *generally*. The segregability analysis undertaken by the defendant started from the faulty premise that discussions of the Agreement were exempt from the FOIA. *See* 2d Walter Decl. ¶ 31 ("We have identified no meaningful non-exempt information that can be reasonably segregated and released."). Since the defendant now has clear guidance under which to conduct its segregability review, the Court denies the plaintiff's Motion for *In Camera* Review without prejudice and summary judgment to both parties. The defendant is instructed to conduct another segregability review of Document H-16A under the interpretation of the Agreement articulated in this Memorandum Opinion and produce the reasonably segregable, non-exempt material in the document to the plaintiff.

### C. State Department Document H-16B Must Be Reexamined

The defendant's withholding of Document H-16B suffers from the same error in interpretation. The defendant's declarant states that the document "contains proposed talking points concerning the pending totalization agreement with Mexico." 2d Walter Decl. ¶ 32. As explained, for the purposes of Exemption 5, the United States-Mexico Agreement is not "pending." Moreover, this document is dated February 15, 2011, nearly seven years after the Agreement was signed. *See id.* Thus, as it applies to the Agreement, this document cannot be "predecisional."

Nevertheless, the defendant's declarant notes that the document "makes reference to similar negotiations for a totalization agreement with another country." *Id.* ¶ 33. If this other totalization agreement has not been signed, the portions of the document pertaining to that agreement are likely "predecisional" within the meaning of the FOIA's Exemption 5. Therefore, the Court denies the plaintiff's Motion for *In Camera* Review without prejudice and summary judgment to both parties. The defendant is instructed to conduct another segregability review of Document H-16B under the interpretation of the Agreement and what constitutes a final agency policy as articulated in this Memorandum Opinion and produce the reasonably segregable, non-exempt material in the document to the plaintiff.

### D. State Department Document O-28 Is Not Properly Withheld Under Exemption 5.

The plaintiff argues that Document O-28, the "Action Memorandum," pertains solely to the Agreement, which has already been signed, and therefore even though the document was pre-decisional when it was generated, it has since been adopted as final agency policy. *See* Pl.'s 2d Mem. at 23, 30. Consequently, the plaintiff contends that Exemption 5 is inapplicable.

The defendant asserts that because State Department Document O-28 is the document by which authorization was sought, and eventually granted, to sign the Agreement, the document is "intrinsically pre-decisional." 2d Walter Decl. ¶ 36. This is only the case, however, if the agency does not eventually adopt the rationale within the document. *See Sears*, 421 U.S. at 161. By the defendant's own admission, the authorization sought in Document O28 was granted and became the defendant's official policy when the Agreement was signed. *See* 2d Walter Decl. ¶ 36. Therefore, under *Sears*, the document has lost any protection it once had under Exemption 5 because the course advocated in the document, namely, signing the agreement, was adopted as an official agency policy.

Document O-28 consists of the official reasons put forth by the Assistant Secretary, Bureau of Consular Affairs, of the Department of State as to why the Assistant Secretary was planning to sign the Agreement on behalf of the United States.  2d Walter Decl. ¶ 36; *Cf. Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (finding Exemption 5 withholding appropriate for memorandum by "brand new staff attorney," who was asked for "ammunition for the expected fray, in part as advice on whether and when to duck" during the legislative battle over proposed legislation sought by the Department of Justice and memorandum reflected "his or her own subjective opinions" with "no binding effect on the recipient").  When the authorization was granted, those rationales expressed by the Assistant Secretary became the agency's final policy, as admitted by the defendant, whose declarant notes that these rationales "would likely affect a subsequent decision" if a proposal were made to change the Agreement.  *Id.*  Document O-28 is similar to the memoranda in *Public Citizen*, in that these rationales, as the defendant admits, will serve as a "starting point" for any future changes.  *See Public Citizen*, 598 F.3d at 875–76.  Thus, State Department Document O-28 is not properly withheld under Exemption 5.

E.  **SSA Documents 16C, 16D, and 16E Are Not Properly Withheld Under Exemption 5.**

The defendant and the SSA attempt to justify the withholding of SSA Documents 16C, 16D, and 16E by referring to the documents as "drafts" because, as the defendant admits, they cannot qualify as "pre-decisional with regard to the decision to sign the agreement."  Def.'s Reply at 10.  There is no doubt from the SSA declarant that these documents are not "pre-decisional" because they were generated after the Agreement was signed and merely explain the Agreement.  *See* Wiggins Decl. ¶¶ 7–8.  "Exemption 5 does not apply to final actions of agencies, in the sense of statements of policy and final opinions which have the force of law *or*

*which explain actions the agency has already taken.*" *Ryan v. U.S Dep't of Justice*, 617 F.2d 781, 790–91 (D.C. Cir. 1980) (emphasis added). As explained *supra*, the Agreement is a "final action" and the SSA declarant makes clear that Documents 16C, 16D, and 16E merely explain the action the defendant has already taken. These documents stand in marked contrast to the memorandum at issue in *Access Reports* that the D.C. Circuit found was prepared by a junior attorney to "help his superiors in the process of defending the legislative package the Department had already offered" and properly withheld under Exemption 5. *Access Reports*, 926 F.2d at 1196. Rather, the SSA documents represent the final explanation of the Agreement as understood by the SSA, the agency responsible for eventually implementing the Agreement. *See* Wiggins Decl. ¶¶ 8–9. Consequently, these three documents are not properly withheld under Exemption 5.

## IV. CONCLUSION

For the foregoing reasons, both parties' Motions for Summary Judgment are GRANTED in part and DENIED in part. Summary judgment is granted to the plaintiff as to State Department Document O-28 and SSA Documents 18C, 18D, and 18E, and denied in all other respects. Summary judgment is GRANTED to the defendant as to the ten undisputed documents and denied in all other respects. The defendant shall, by November 12, 2013, (1) produce to the plaintiff unredacted copies of State Department Document O-28 and SSA Documents 18C, 18D, and 18E; (2) conduct a new segregability review of State Department Documents H-16A and H-16B; and (3) produce to the plaintiff all reasonably segregable portions of State Department Documents H-16A and H-16B in light of the guidance provided in this Memorandum Opinion. The plaintiff's Second Renewed Motion for *In Camera* Review is DENIED without prejudice.

The parties shall, by November 26, 2013, jointly submit a status report setting forth a proposed schedule to govern further proceedings in this matter or advising that the case may be closed.

An appropriate Order accompanies this Memorandum Opinion.

Date:  October 30, 2013

_____
BERYL A. HOWELL
United States District Judge